# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
June 4, 2010 Session

## CAO HOLDINGS, INC. v. CHARLES A. TROST, COMMISSIONER OF REVENUE

**Appeal by Permission from the Court of Appeals, Middle Section**
**Chancery Court for Davidson County**
**No. 06-719-II     Carol L. McCoy, Chancellor**

---

**No. M2008-01679-SC-R11-CV - Filed December 15, 2010**

---

This appeal involves a corporation's liability for the payment of use tax following its purchase of a business jet. After it received an assessment from the Tennessee Department of Revenue for over $700,000, the corporation paid the tax and filed suit in the Chancery Court for Davidson County seeking a refund on the ground that it qualified for the sale for resale exemption under Tenn. Code Ann. § 67-6-102(a) (28)(A) (Supp. 2004) because it had leased the aircraft to another corporation. Both the corporation and the Department filed motions for summary judgment. The trial court granted the corporation's motion for summary judgment, and the Department appealed. A divided Court of Appeals panel affirmed the trial court. *CAO Holdings, Inc. v. Chumley*, No. M2008-01679-COA-R3-CV, 2009 WL 1492230 (Tenn. Ct. App. May 27, 2009). We granted the Department's application for permission to appeal. We have now determined that neither party is entitled to a summary judgment because material disputes exist regarding the factual inferences or conclusions that can be drawn from the facts.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals Reversed and Remanded**

WILLIAM C. KOCH, JR., J., delivered the opinion of the Court, in which CORNELIA A. CLARK, C.J., JANICE M. HOLDER, J., and DAVID H. WELLES, SP. J., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Michael E. Moore, Solicitor General; and Brad H. Buchanan, Assistant Attorney General, Nashville, Tennessee, for the appellant, Charles A. Trost,[1] Commissioner of Revenue, State of Tennessee.

---

[1] In accordance with Tenn. R. App. P. 19(c), Charles A. Trost, the current Commissioner of Revenue, has been substituted for his predecessors, Loren L. Chumley and Reagan Farr.

Brett R. Carter, Christopher A. Wilson, and G. Michael Yopp, Nashville, Tennessee, for the appellee, CAO Holdings, Inc.

**OPINION**

**I.**

James L. Clayton is a successful business executive who lives in Knoxville. He is also an accomplished pilot and owns or has owned various aircraft personally and in connection with his many businesses. Prior to the events that gave rise to this litigation, Mr. Clayton owned a Cessna Citation V Ultra business jet and a Bell 407 corporate helicopter. In 2002 or 2003, after deciding that he wanted a larger, quieter, and more comfortable aircraft, Mr. Clayton ordered a Cessna Citation Excel 560-XLS business jet. He later explained that the new aircraft would permit passengers to "walk up the stairs into the airplane much like you'd see the President of the United States walking into Air Force One" and that he could "even get a wheelchair in it, if necessary."

The purchase price of the aircraft was $10,022,800. Mr. Clayton realized that this was a "very high price" for someone like him who planned to use the aircraft approximately 150 hours per year. He understood that the aircraft would need to be flown at least three times more often than he planned to fly it in order for its operating costs to be less than the cost of chartering or owning a timeshare in an aircraft. Accordingly, Mr. Clayton decided that "in order to justify that airplane, I had to have other people paying for part of it."

While waiting on the delivery of his new airplane, Mr. Clayton obtained the assistance of Advocate Consulting Legal Group, PLLC ("Advocate Consulting"), a firm specializing in structuring transactions involving aircraft.[2] On December 27, 2004, acting on advice from Advocate Consulting, Mr. Clayton incorporated two corporations – CAO Holdings, Inc. ("CAO Holdings") and CAM Management, Inc. ("CAM Management"). Mr. Clayton was the sole shareholder and president of both corporations. The principal place of business of CAO Holdings and CAM Management was Mr. Clayton's personal residence, where he maintained an office.

CAO Holdings was created to insulate Mr. Clayton from personal liability for the operation of the new aircraft. Its role was to complete the transaction with Cessna and to hold title to the aircraft. The purpose of CAM Management was to arrange for the time sharing agreements for the use of the aircraft by third parties. CAM Management hired Peter

---

[2]Mr. Clayton described Advocate Consulting as "legal and accounting consultants . . . specializing in aircraft."

Breazeale as its sole employee.[3]  Mr. Breazeale's responsibilities included piloting the aircraft, managing the aircraft's maintenance, and paying the company's bills.

On February 14, 2005, and in anticipation of the completion of the purchase of the aircraft, CAO Holdings filed registrations for sales and use tax and for franchise and excise tax with the Tennessee Department of Revenue ("Department").  The effective date of the sales and use tax registration was March 1, 2005; while the effective date of the franchise and excise tax registration was March 16, 2005.

On February 25, 2005, CAO Holdings took delivery of the new aircraft at Cessna's factory in Wichita, Kansas and finalized the sale of the aircraft using funds provided by Mr. Clayton personally.  CAO Holdings did not pay Kansas sales tax when it purchased the aircraft based on its promise to provide Cessna with a blanket certificate for resale as soon as the Department issued it.[4]  After the transaction was completed, Mr. Breazeale flew the aircraft back to Tennessee.  Mr. Clayton was co-pilot for part of this trip.

On February 25, 2005, the same day it purchased the aircraft, CAO Holdings entered into a "non-exclusive aircraft lease agreement" with CAM Management.  Under the terms of this agreement, CAM Management agreed to lease the aircraft from CAO Holdings at a "dry lease" rate of $550 per flight hour with an initial $5,000 deposit due on March 31, 2005. CAM Management also agreed to be responsible for all operating costs of the aircraft.  In addition, the agreement provided that CAM Management would pay the rent due to CAO Holdings on October 31 of each year.  For its part, CAO Holdings agreed to calculate the sales tax due and to remit the tax to the Department.

CAO Holdings believed that its February 25, 2005 lease agreement with CAM Management was a valid exempt "resale" under Tenn. Code Ann. § 67-6-102(a)(28)(A) (Supp. 2004).  Accordingly, CAO Holdings did not remit use tax to the State of Tennessee when it purchased the aircraft.

According to its flight logs, the aircraft was flown fairly regularly beginning in March 2005.  Mr. Clayton used the aircraft to visit his banks in Tennessee and to visit his banks' customers in Colorado, Arizona, and Florida.  These flight logs list "CAO," not CAM Management, as the "operator" of the aircraft and state that Mr. Clayton himself was either the pilot or co-pilot on a substantial number of the flights.

---

[3]Mr. Breazeale is a pilot and was already employed by Mr. Clayton.  Other persons employed by Mr. Clayton also provided accounting services to CAM Management.

[4]After CAO Holdings received its blanket certificate for resale from the Department with an effective date of March 1, 2005, it provided a copy of the certificate to Cessna.

In order to have others pay for part of the aircraft's operations, Mr. Clayton "lined up" several other entities who "felt they'd use the plane 25 to 100 hours a year." However, it was not until April 27, 2005, two months after taking delivery of the aircraft, that CAM Management began to enter into time sharing agreements with other entities.[5] By this time, the aircraft had made eighteen separate flights, and Mr. Clayton had been the pilot or co-pilot on seventeen of them.

On June 8, 2005, after receiving information from the Federal Aircraft Administration regarding CAO Holdings's purchase of the aircraft, the State of Tennessee sent a letter to CAO Holdings requesting the information needed to determine whether the required sales or use tax had been paid on the aircraft. While the record does not clearly show that CAO Holdings responded directly to this letter, the company filed a tax return on July 11, 2005, stating that no tax was due.[6] CAO Holdings later filed an amended return and remitted a $430 tax payment based on the $5,000 payment it had received from CAM Management on March 31, 2005. On August 5, 2005, the Department issued a notice of assessment seeking the payment of $703,232 for failure to pay use tax in Tennessee based on the estimated purchase price of the aircraft. CAO Holdings requested an informal taxpayer conference with the Department shortly after receiving the assessment.

It was at this time that Mr. Clayton began to experience buyer's remorse. In addition to receiving the Department's substantial tax assessment, Mr. Clayton was disappointed that those who had promised to use the aircraft were not using it as much as he had anticipated they would. Accordingly, on August 18, 2005, CAO Holdings stopped permitting CAM Management to use the aircraft and, with the assistance of Advocate Consulting, put the aircraft up for sale. A business in Argentina purchased the aircraft on September 6, 2005. On October 7, 2005, CAO Holdings filed its September 2005 tax return along with a $1,694 use tax payment.[7]

In late December 2005, the Department provided CAO Holdings with a written response to the informal taxpayer conference. The Department upheld its tax assessment based on the following findings: (1) CAM Management was not registered with either the

_____

[5]On April 27, 2005, CAM Management signed time sharing agreements with six companies – Clayton Bancorp, Inc., Clayton Homes, Inc., Clayton Motors, Inc., Clayton Used Cars, Inc., Clayton Volvo, Inc., and 21st Mortgage Company. Mr. Clayton entered into his own time sharing agreement with CAM Management on May 5, 2005. The record contains an additional undated time sharing agreement with American City Bank.

[6]CAO Holdings apparently reported that no tax was due because it had not yet received its first lease payment from CAM Management.

[7]The tax was calculated on the $23,050 in lease payments CAO Holdings had received from CAM Management.

Department or the Secretary of State; (2) CAO Holdings had failed to comply with the reporting requirements in Tenn. Code Ann. § 42-1-113 (2000) regarding aircraft transactions; (3) CAO Holdings had failed to comply with the regulations regarding sales for resale by failing to properly register with the Department; and (4) the lease between CAO Holdings and CAM Management was not genuine because Mr. Clayton had signed on behalf of both the lessor and lessee, the legal existence of the lessee (CAM Management) could not be verified, and CAO Holdings had failed to pay any tax until contacted by the Department.

On March 22, 2006, CAO Holdings filed suit in the Chancery Court for Davidson County seeking a declaratory judgment that the Department's assessment was invalid because its lease of the aircraft to CAM Management qualified as a sale under Tenn. Code Ann. § 67-6-102(a)(34)(A) (Supp. 2004). On April 28, 2006, the Department issued a revised assessment in the amount of $779,521.57 based on the correct purchase price of the aircraft appearing in CAO Holdings's complaint. On May 18, 2006, CAO Holdings paid the assessed tax and filed an amended complaint converting the proceeding to a suit for a refund. The Department thereafter filed its answer.

Both CAO Holdings and the Department filed motions for summary judgment on February 19, 2008. In its motion and supporting documents and during the June 6, 2008 hearing before the trial court, CAO Holdings argued (1) that its lease with CAM Management was valid, (2) that it had met all the requirements for the sale for resale exemption from the requirement to pay sales tax, and (3) that, unlike federal tax law, Tennessee law did not favor disregarding the form of a transaction and focusing on its substance.

For its part, the Department argued: (1) that CAO Holdings and CAM Management failed to satisfy the requirements for the sale for resale exemption, (2) that the lease between CAO Holdings and CAM Management was a sham because it conferred no real authority over the use of the aircraft to CAM Management, (3) that the lease between CAO Holdings and CAM Management was a sham because all of CAM Management's time sharing agreements were with entities related to Mr. Clayton, and (4) that Mr. Clayton's extensive personal use of the aircraft – evidenced by the flight logs listing him as either the pilot or co-pilot on nearly every flight – precluded the application of the sale for resale exemption.

At the outset of the hearing on June 6, 2008, the trial court requested the parties to stipulate that none of the facts material to the case were in dispute.[8] Counsel for CAO

---

[8]It is not uncommon for tax cases to be tried on stipulated facts. *See, e.g.*, *Illinois Cent. Gulf R.R. v. State*, 805 S.W.2d 746, 746 (Tenn. 1991); *Health & Educ. Facilities Bd. of Shelby Cnty. v. King*, 678 S.W.2d 14, 15 (Tenn. 1984); *Woods v. TRW, Inc.*, 557 S.W.2d 274, 274 (Tenn. 1977). Accordingly, it was entirely appropriate for the trial court to encourage the parties to stipulate that the material facts were not in

(continued...)

Holdings stipulated that there were no facts in dispute. Counsel for the Department likewise stipulated that no facts were disputed but pointed out that the Department disagreed with CAO Holdings's "legal characterizations or gloss on the facts."

At the conclusion of the hearing, the trial court, departing from its custom of taking tax cases under advisement, extemporaneously granted CAO Holdings's motion for summary judgment. The court concluded that the lease of the aircraft between CAO Holdings and CAM Management was a sale for resale and, therefore, that CAO Holdings was not liable for the payment of use tax. The trial court stated that it would decline to "ignore the proper structure of the two corporations [CAO Holdings and CAM Management]" and observed that "arguing that an individual has [benefitted] by virtue of basically his wealth, that he is not entitled to use all of what the law provides for legal transactions is not compelling." Reflecting its decision from the bench, the trial court's memorandum and final order entered on June 27, 2008 stated:

> Looking at the transaction as it has been set up, the steps that have been taken, and the primary use that the corporations at issue were set up for, the Court finds no compelling reason to disregard the corporate existences of either CAO Holdings or CAM Management. Rather, the Court finds that both entities were formed for a valid business reason and, therefore, must be respected. The Court further finds that a valid lease existed between CAO Holdings and CAM Management. Accordingly, the Court holds that the motion for summary judgment filed on behalf of the Plaintiff should be granted.

In addition, the trial court found that CAO Holdings was the prevailing party for the purpose of Tenn. Code Ann. § 67-1-1803(d) (Supp. 2007) and determined that it was entitled to recover its reasonable attorney's fees and costs. However, the court reserved awarding attorney's fees and costs and, in accordance with Tenn. R. Civ. P. 54.02, certified its order as a final and appealable judgment.

The Department perfected a timely appeal to the Court of Appeals. The court affirmed the trial court's grant of a summary judgment to CAO Holdings in a divided decision. The majority concluded that CAM Management was the primary user of the aircraft because it had paid CAO Holdings for all the flight hours and CAO Holdings had remitted the appropriate amount of sales tax to the Department based on these payments. *CAO Holdings, Inc. v. Chumley*, No. M2008-01679-COA-R3-CV, 2009 WL 1492230, at \*5 (Tenn. Ct. App. May 27, 2009). The majority also rejected the Department's argument that

---

[8](...continued)
dispute.

Mr. Clayton created CAO Holdings and CAM Management for the purpose of tax avoidance by holding that these corporate entities had been "properly formed" and had observed "all corporate formalities" and that there was no evidence that either the corporations or the contract between them "were mere shells or shams such that the corporate entities should be disregarded." *CAO Holdings, Inc. v. Chumley*, 2009 WL 1492230, at *6.

In dissent, Judge Clement pointed out that CAO Holdings ultimately had the burden of proving that it was entitled to take advantage of the sale for resale exemption from the payment of use tax. He found that CAO Holdings had not carried its burden because the non-exclusive nature of the lease between CAO Holdings and CAM Management, combined with the flight logs listing CAO Holdings as the operator of the aircraft, suggested that the primary purpose for purchasing the aircraft was not simply leasing it to CAM Management. *CAO Holdings, Inc. v. Chumley*, 2009 WL 1492230 at *8 (Clement, J., dissenting).

On July 24, 2009, the Department filed a timely application for permission to appeal. We granted the Department's application to address the requirements of the sale for resale exemption and the application of this exemption to the facts in this record.

**II.**

Summary judgments are appropriate in virtually any civil case that can be resolved on the basis of legal issues alone. *B & B Enters. of Wilson Cnty., LLC v. City of Lebanon*, 318 S.W.3d 839, 844 (Tenn. 2010); *Fruge v. Doe*, 952 S.W.2d 408, 410 (Tenn. 1997). Because legal disputes involving the payment of taxes are frequently based on stipulated facts, they generally lend themselves to disposition by summary judgment as issues of law. However, the well-understood principles generally governing the review of summary judgments are equally applicable to summary judgments in proceedings involving tax disputes. *See BellSouth Adver. & Publ'g Co. v. Johnson*, 100 S.W.3d 202, 205 (Tenn. 2003).

Summary judgment proceedings were never envisioned as substitutes for trials of disputed factual issues. *Martin v. Norfolk S. Ry.*, 271 S.W.3d 76, 89 (Tenn. 2008) (Koch, J., concurring in part); *Fruge v. Doe*, 952 S.W.2d at 410. Accordingly, a summary judgment should not be granted when the material facts are disputed, *Green v. Green*, 293 S.W.3d 493, 513-14 (Tenn. 2009), or when more than one conclusion or inference can reasonably be drawn from the facts, *see Brown v. Birman Managed Care, Inc.*, 42 S.W.3d 62, 66 (Tenn. 2001); *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993).

Because orders granting a summary judgment are not presumed to be correct, the appellate courts must satisfy themselves independently that all the requirements of Tenn. R. Civ. P. 56 have been satisfied. *Eskin v. Bartee*, 262 S.W.3d 727, 732 (Tenn. 2008); *Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004). In conducting their review, the

appellate courts must consider the evidence in the light most favorable to the non-moving party and must resolve all reasonable inferences in the non-moving party's favor. *B & B Enters. of Wilson Cnty., LLC v. City of Lebanon*, 318 S.W.3d at 845; *Mills v. CSX Transp., Inc.*, 300 S.W.3d 627, 631-32 (Tenn. 2009).

A summary judgment should not be granted when a case's determinative facts[9] are disputed. A genuine factual dispute arises when reasonable minds can justifiably reach different conclusions based on the evidence at hand. *Martin v. Norfolk Southern Ry.*, 271 S.W.3d at 84. A summary judgment motion should be denied if there is any reasonable doubt regarding whether a genuine issue of material fact exists. *Green v. Green*, 293 S.W.3d at 514; *Doe I ex rel. Doe I v. Roman Catholic Diocese of Nashville*, 154 S.W.3d 22, 41 (Tenn. 2005). However, granting a summary judgment is appropriate whenever the evidence and the inferences reasonably drawn from the evidence permit reasonable persons to reach only one conclusion – that the moving party is entitled to a judgment as a matter of law. *Kinsler v. Berkline, LLC*, 320 S.W.3d 796, 801 (Tenn. 2010); *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009).

Tenn. R. Civ. P. 56 permits any party to move for summary judgment regardless of whether that party is the plaintiff or the defendant. Accordingly, the courts are sometimes confronted with cross-motions for summary judgment. Although many cases with competing motions for summary judgment can be disposed of based on these motions, it does not necessarily follow that a summary judgment must be granted to one side or the other simply because both parties have moved for a summary judgment. *LewRon Television, Inc. v. D. H. Overmyer Leasing Co.*, 401 F.2d 689, 692 (4th Cir. 1968). The fact that both parties are arguing simultaneously that there is no genuine issue of material fact does not establish that a trial is unnecessary. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991); 10A Charles A. Wright et al., *Federal Practice and Procedure* § 2720, at 327-28 (3d ed. 1998) ("*Federal Practice and Procedure*").

Cross-motions for summary judgment are no more than claims by each side that it alone is entitled to a summary judgment. *Rains v. Cascade Indus., Inc.*, 402 F.2d 241, 245 (3d Cir. 1968). The court must rule on each party's motion on an individual and separate basis. *See Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003); *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001); *Philip Morris, Inc. v. Harshbarger*, 122 F.3d 58, 62 n.4 (1st Cir. 1997); *see also* 10A *Federal Practice and Procedure* § 2720, at 335-36. With regard to each motion, the court must determine (1) whether genuine disputes of material fact with regard to that motion exist and (2) whether the party seeking the summary

---

[9]Not all factual disputes require the denial of a summary judgment motion. Accordingly, only genuine disputes involving material facts require the denial of a motion for summary judgment. In order to be considered material, a fact must be germane to the claim or defense on which the summary judgment is based. *Green v. Green*, 293 S.W.3d at 514.

judgment has satisfied Tenn. R. Civ. P. 56's standards for a judgment as a matter of law. *Eskin v. Bartee*, 262 S.W.3d at 732. Therefore, in practice, a cross-motion for summary judgment operates exactly like a single summary judgment motion. 11 James Wm. Moore et al., *Moore's Federal Practice* § 56.10[6], at 56-85 to -86 (3d ed. 2009) ("*Moore's Federal Practice*").

When considering individual competing cross-motions for summary judgment, the court must take care to resolve all factual disputes and any competing rational inferences in the light most favorable to the party opposing each motion. *Wightman v. Springfield Terminal Ry.*, 100 F.3d 228, 230 (1st Cir. 1996); *Schwabenbauer v. Bd. of Educ.*, 667 F.2d 305, 314 (2d Cir. 1981). The denial of one motion does not necessarily imply that the other party's motion should be granted. 11 *Moore's Federal Practice* § 56.10[6], at 56-83. Both summary judgment motions should be denied if the court finds that there is a genuine dispute regarding a material issue of fact with regard to both motions, *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir. 1993); *Taft Broad. Co. v. United States*, 929 F.2d at 248; 10A *Federal Practice and Procedure* § 2720, at 336, or if the parties disagree as to the inferences or conclusions to be drawn from the facts material to both motions, *American Fid. & Cas. Co. v. London & Edinburgh Ins. Co.*, 354 F.2d 214, 216 (4th Cir. 1965); *Admiral Ins. Co. v. G4S Youth Servs.*, 634 F.Supp.2d 605, 611 (E.D. Va. 2009).

Here, both CAO Holdings and the Department filed motions for summary judgment. The lower courts granted CAO Holdings's motion and denied the Department's. On appeal, the Department insists that the trial court erred both by granting CAO Holdings's motion and by denying its motion. Even if the lower courts erred by granting CAO Holdings's summary judgment motion, it does not necessarily follow that the Department was entitled to a summary judgment. Accordingly, we must first determine whether the trial court erred by granting CAO Holdings's motion for summary judgment. If we determine that the lower courts erred, then we must determine whether the Department demonstrated that it was independently entitled to a summary judgment.

**III.**

Tennessee imposes a tax on the sale of tangible personal property by retailers located within the State. Tenn. Code Ann. § 67-6-202 (Supp. 2004). This tax is collected by the retailer and remitted to the Department because it is a tax on the privilege to "[e]ngage[] in the business of selling tangible personal property at retail in this state." Tenn. Code Ann. § 67-6-201(1) (Supp. 2004).

In order to protect Tennessee's retailers and to discourage Tennessee residents from avoiding the payment of sales tax by purchasing tangible personal property in other states, Tennessee also imposes a use tax, as a complement to the sales tax, on tangible personal property that "is not sold but is used, consumed, distributed, or stored for use or consumption

in this state." Tenn. Code Ann. § 67-6-203(a) (Supp. 2004). To avoid duplicate taxation of out-of-state purchases, Tenn. Code Ann. § 67-6-507(a) (2003) provides a credit for like taxes paid to other states on the purchase of tangible personal property. In other words, the amount of use tax liability is equal to the amount of sales tax liability less the sales tax paid in the state where the tangible personal property was purchased.

Tennessee's tax policy also seeks to place the ultimate burden for the payment of sales and use tax on the end user of the tangible personal property. Accordingly, intermediary dealers are relieved of the burden of collecting and remitting sales or use tax when they are not an end user. For purposes relevant to this appeal, a "dealer" is defined in Tenn. Code Ann. § 67-6-102(a)(8)(B) (Supp. 2004) as "every person . . . who . . . [i]mports, or causes to be imported, tangible personal property from any state . . . for sale at retail, for use, consumption, distribution, or for storage to be used or consumed in this state." Thus, persons or entities falling within the statutory definition of "dealer" are permitted certain exemptions from the payment of sales or use tax.

One significant exemption, commonly referred to as the "sale for resale" exemption, is found in Tenn. Code Ann. § 67-6-102(a)(28)(A) which defines "retail sales" or "sale at retail" as "a taxable sale of tangible personal property or specifically taxable services to a consumer or to any person for any purpose other than for resale." The courts have construed the phrase "for any purpose other than for resale" as creating an exemption that excludes sales for resale from taxation. *Eusco, Inc. v. Huddleston*, 835 S.W.2d 576, 582 (Tenn. 1992) (citing *Nasco, Inc. v. Jackson*, 748 S.W.2d 193, 194 (Tenn. 1988)).

A "sale," and therefore a resale, includes "any transfer of title or possession, or both, exchange, barter, lease or rental, conditional, or otherwise, in any manner or by any means whatsoever of tangible personal property for a consideration." Tenn. Code Ann. § 67-6-102(a)(30)(A) (Supp. 2004); *see also Cape Fear Paging Co. v. Huddleston*, 937 S.W.2d 787, 788 (Tenn. 1996). A lease or rental is "the leasing or renting of tangible personal property and the possession or use thereof by the lessee or renter for a consideration, without transfer of the title of such property." Tenn. Code Ann. § 67-6-102(a)(21) (Supp. 2004).

A sale must satisfy two criteria in order to qualify as a sale for resale. First, the sale must have been made for the purpose of resale. Tenn. Code Ann. § 67-6-102(a)(28)(A). Second, the sale must be "in strict compliance with rules and regulations promulgated by the [C]ommissioner." Tenn. Code Ann. § 67-6-102(a)(28)(A). Any dealer who makes a sale for resale that is not in strict compliance with the rules and regulations promulgated by the Commissioner of Revenue "shall be personally liable for and pay the tax." Tenn. Code Ann. § 67-6-102(a)(28)(A).[10]

---

[10]The Department argued in the trial court that CAO Holdings had failed to comply with the
(continued...)

**IV.**

The transaction at issue in this case is CAO Holdings's lease of the aircraft to CAM Management. In addition to the principles generally applicable to the sale for resale exemption, there are additional rules and regulations specifically applicable to leases. In order for a lease of tangible personal property to qualify as an exempt sale for resale, the tangible personal property must "be used exclusively for renting or leasing." Tenn. Comp. R. & Regs. 1320-5-1-.32(3) (1987); *see also* Tenn. Comp. R. & Regs. 1320-5-1-.68(3) (1987) ("[c]ertificates of resale may not be used to obtain tangible personal property or taxable services to be used by the purchaser, and not for resale.").

It appears that the parties' and the lower courts' attention may have been diverted from this "exclusive use" requirement by the Department's assertion that the availability of the sale for resale exemption depended on the "primary use" to which the aircraft was put. This argument was based on an opinion of the Attorney General and Reporter stating that "[i]f the plane is acquired to be . . . rented, then the transaction qualifies as a 'sale for resale'" but that "[i]f the plane is put to several uses, its primary use should govern its taxability." Op. Tenn. Att'y Gen. 84-213, 1984 Tenn. AG Lexis 134, at *5 (July 3, 1984).

The Attorney General's opinion is not an adjudication, *City of Memphis v. Shelby Cnty. Election Comm'n*, 146 S.W.3d 531, 538 n.6 (Tenn. 2004), and is not binding on the courts. *Scott v. Ashland Healthcare Ctr., Inc.*, 49 S.W.3d 281, 287 (Tenn. 2001) (quoting *State v. Black*, 897 S.W.2d 680, 683 (Tenn. 1995)). In addition, the factual circumstances addressed by the Attorney General differ substantively from the facts of this case. The circumstances presented to the Attorney General involved an aircraft that was put to multiple uses – some taxable and some not taxable. The Attorney General invoked the doctrine of primary use to address the fact that the aircraft was put to multiple uses. The doctrine has no application here because there is no dispute that CAO Holdings's only business purpose for purchasing the aircraft was to lease it to CAM Management. Therefore, two of the central issues in this case are whether CAO Holdings used the aircraft exclusively for leasing to CAM Management and whether Mr. Clayton's extensive personal use of the aircraft is inconsistent with the exclusive use requirement.

Neither the Department's regulations nor the applicable statutes governing sales and use taxes specifically define the phrase "used exclusively for renting or leasing" as it appears

---

[10](...continued)
applicable rules and regulations because it failed to notify the Department of its acquisition of the aircraft as required by Tenn. Code Ann. § 42-1-113 (2000) and because CAM Management failed to register with either the Department or the Secretary of State. However, the Department has not renewed these arguments in the proceedings before us. Accordingly, we need not address in this opinion whether the transaction between CAO Holdings and CAM Management strictly complied with these requirements.

in Tenn. Comp. R. & Regs. 1320-5-1-.32(3). The principles used to ascertain the meaning of revenue regulations are essentially the same as those that govern the construction of revenue statutes. *Houghten v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 679 (Tenn. 2002) (citing *Consumer Advocate Div. v. Greer*, 967 S.W.2d 759, 762 (Tenn. 1998)).

Statutes that impose a tax must be construed liberally in favor of the taxpayer and strictly against the taxing authority; while statutes providing for exemptions from taxation are to be strictly construed against the taxpayer. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d 503, 507 (Tenn. 2004); *AFG Indus., Inc. v. Cardwell*, 835 S.W.2d 583, 584-85 (Tenn. 1992). However, statutes imposing a tax must be given a fair construction. *United Inter-Mountain Tel. Co. v. Moyers*, 221 Tenn. 246, 255, 426 S.W.2d 177, 181 (1968). Accordingly, the court must give effect to the language of the statute and must not use the strict construction rule to thwart the intent to impose a tax. *Int'l Harvester Co. v. Carr*, 225 Tenn. 244, 259-60, 466 S.W.2d 207, 214 (1971).

Unless the text of a revenue statute requires otherwise, the courts should give the words in the statute their natural and ordinary meaning. *Eastman Chem. Co. v. Johnson*, 151 S.W.3d at 507; *Nashville Golf & Athletic Club v. Huddleston*, 837 S.W.2d 49, 53 (Tenn. 1992). When these words clearly reflect the purpose of the statute, they should be enforced as written. *Stratton v. Jackson*, 707 S.W.2d 865, 866 (Tenn. 1986).

A statute's meaning is derived, not from considering the separate meaning of each individual word in a statute, but from considering the entire statute as a whole in light of its general purpose. *See State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000); *First Nat'l Bank of Memphis v. McCanless*, 186 Tenn. 1, 8, 207 S.W.2d 1007, 1009 (1948). Thus, rather than "'mak[ing] a fortress out of the dictionary,'" *Crown Enters., Inc. v. Woods*, 557 S.W.2d 491, 493 (Tenn. 1977) (quoting *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir. 1945)); *cf. Western Pipe Line Constructors, Inc. v. Dickinson*, 203 Tenn. 248, 257, 310 S.W.2d 455, 459-60 (1958), the courts' role is to ascertain and give the fullest possible effect to the General Assembly's intent and purpose without unduly restricting the statute's application or to expand its application beyond its intended scope. *In re Estate of Davis*, 308 S.W.3d 832, 837 (Tenn. 2010); *Seals v. H & F, Inc.*, 301 S.W.3d 237, 242 (Tenn. 2010).

The meaning of the phrase "used exclusively for renting or leasing" is clear and requires no construction. The word "exclusive" and its derivatives connote "with no exceptions" or "[e]xcluding all but what is specified." *See* Bryan A. Garner, *A Dictionary of Modern Legal Usage* 336 (2d ed. 1995); 5 *The Oxford English Dictionary* 510 (2d ed. 1989). Accordingly, tangible personal property that is "used exclusively for renting or

leasing" consists of tangible personal property that is used solely for renting or leasing to the exclusion of any other use to which the property could be put.[11]

## V.

The parties disagree about the proper conclusion to be drawn on the exclusive use question, but each party insists that the undisputed facts support only its position. Not surprisingly, CAO Holdings asserts that the undisputed facts demonstrate as a matter of law that the aircraft was used exclusively for renting or leasing. The Department takes the contrary position by insisting that the only conclusion that can be drawn from the undisputed facts is that CAO Holdings did not use the aircraft exclusively for renting or leasing.

CAO Holdings contends that the only use to which it put the aircraft was to lease it to CAM Management. It points out that on February 25, 2005, the same day it purchased the aircraft, it entered into a non-exclusive aircraft lease agreement with CAM Management. It also points out that it eventually entered into valid time sharing agreements on April 27, 2005. Finally it emphasizes that a pilot employed by CAM Management was the pilot or co-pilot of the aircraft on "practically every flight," that CAM Management paid it $550 per flight hour, and that it paid use taxes based on these payments.

The Department counters that the evidence demonstrates that CAO Holdings used the aircraft for purposes other than renting or leasing. It points to the undisputed evidence that the aircraft's flight logs list CAO Holdings rather than CAM Management as the "operator" of the aircraft and that Mr. Clayton is listed as either pilot or co-pilot on flights that amounted to approximately seventy-five percent of the total flight hours. The Department also points to Mr. Clayton's testimony that several of the aircraft's initial flights "relate[d] to business activities" and that several of the trips were for his own purposes.[12] It also emphasizes that it is undisputed that the aircraft had been flown on a significant number of flight hours before the time sharing agreements were signed.

CAO Holdings has offered rebuttals to the Department's arguments. While it concedes that it is listed as the aircraft's operator, it insists that the listing is a technicality required by federal regulations and that CAM Management was the operator of the aircraft

___

[11]The Department concedes, and we believe rightly so, that any use of tangible personal property by its owner that is incidental to the act of leasing or renting the property would not run afoul of the "exclusive use" requirement in Tenn. Comp. R. & Regs. 1320-5-1-.32(3). For example, the Department notes that "a dealer might use the property to clean it, repair it, advertise it, demonstrate it, or any number of activities that increase its commercial value in the course of reselling [or leasing] it."

[12]When asked if "some of these trips were for your own purposes," Mr. Clayton answered "Yes, sir." Mr. Clayton's personal use of the plane was also reflected in his testimony regarding his desire to have a nicer and more comfortable aircraft that the business jet he already owned.

-13-

for all practical purposes. It also insists that the timing of the execution of the time sharing agreements was a mere formality, that CAM Management became the operator of the aircraft on February 25, 2005, and that CAM Management was flying its own customers, including Mr. Clayton, prior to the time the agreements were actually signed.

These questions and issues cannot be decided as a matter of law in light of the current posture of this case. Despite the parties' respective assertions that they have no disputes regarding the material facts, it is plain that they disagree about the inferences and conclusions to be drawn from the facts. Summary judgment proceedings have never been envisioned as substitutes for trials of disputed factual issues. *Fruge v. Doe*, 952 S.W.2d at 410; *Layhew v. Dixon*, 527 S.W.2d 739, 742 (Tenn. 1975). Because this Court is ill-equipped to weigh the evidence or to substitute its judgment for that of the trier of fact, *Martin v. Norfolk S. Ry.*, 271 S.W.3d at 87, we must hold that the existence of genuine disputes involving the inferences to be drawn from the material facts should have prevented the trial court from granting a summary judgment to either party.

## VI.

The Department advances two other arguments to support its claim that CAO Holdings was not entitled to the sale for resale exemption. First, it asserts that the lease between CAO Holdings and CAM Management was illusory and, therefore, cannot qualify as a sale for resale. Second, it argues that we should ignore the separate corporate identities of both CAO Holdings and CAM Management in determining whether CAM Management used its aircraft exclusively for renting or leasing. Because neither party is entitled to summary judgment on the exclusive use issue, we next address the Department's contention that it is entitled to summary judgment because the lease was illusory and the lease was a sham transaction.

## A.

The Department argues that the lease between CAO Holdings and CAM Management should be considered illusory because CAO Holding retains the upper hand with regard to the management and control of the aircraft. That which is "illusory" is something "based on a false impression." *See Black's Law Dictionary* 763 (8th ed. 2004). An illusory transfer is "one which takes back all that it gives." *In re Marriage of Frederick*, 578 N.E.2d 612, 615 (Ill. App. Ct. 1991). Thus, the Tennessee Court of Appeals has held that an illusory transfer of an interest in property means "that the transferor retained such elements of ownership and control over the property as renders the purported transfer deceptive, incomplete, and misleading – a pretended transfer rather than a real transfer." *Warren v. Compton*, 626 S.W.2d 12, 19 (Tenn. Ct. App. 1981).

-14-

The transaction between CAO Holdings and CAM Management, at least on the surface, qualifies as a lease as defined in Tenn. Code Ann. § 67-6-102(a)(21). While the lease agreement in the record contains terms that are very favorable to CAO Holdings, the record before us does not establish as a matter of law that the lease was illusory. Accordingly, based on this record, the Department has not carried its burden of demonstrating that it was entitled to a judgment as a matter of law that CAO Holdings must pay use tax on the purchase of the aircraft on the ground that its lease with CAM Management was illusory. The Department will bear the burden of presenting evidence to substantiate this claim on remand.

**B.**

The Department also insists that the undisputed facts require the courts to conclude that the lease transaction between CAO Holdings and CAM Management was a "sham" because both CAO Holdings and CAM Management are "nothing but corporate vessels for [Mr.] Clayton." Accordingly, the Department asserts that the facts require the courts to disregard the separate legal status of these two corporations – to pierce the corporate veil – on the ground that these corporations exist "only to frustrate the clear legislative purpose of the sales tax."

There is no question that the courts may, in appropriate circumstances, pierce the corporate veil and attribute the actions of a corporation to its shareholders. *See generally Cambio Health Solutions, LLC v. Reardon*, 213 S.W.3d 785, 790 (Tenn. 2006); *Oceanics Sch., Inc. v. Barbour*, 112 S.W.3d 135, 140-42 (Tenn. Ct. App. 2003). To pierce the corporate veil, a court must be convinced that the separate corporate entity "is a sham or a dummy" or that disregarding the separate corporate entity is "necessary to accomplish justice." *Oceanics Sch., Inc. v. Barbour*, 112 S.W.3d at 140 (quoting *Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991). Tennessee's courts have consistently used the factors identified in *FDIC v. Allen*, 584 F. Supp. 386, 397 (E.D. Tenn. 1984) to determine whether a corporation's separate legal identity should be ignored.[13] *See, e.g.*, *Pamperin v.*

---

[13]In *FDIC v. Allen*, the United States District Court stated:

> Factors to be considered in determining whether to disregard the corporate veil include not only whether the entity has been used to work a fraud or injustice in contravention of public policy, but also: (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets

(continued...)

*Streamline Mfg., Inc.*, 276 S.W.3d 428, 438 (Tenn. Ct. App. 2008); *Altice v. NATS, Inc.*, No. M2007-00212-COA-R3-CV, 2008 WL 1744571, at *2-3 (Tenn. Ct. App. Apr. 15, 2008) (No Tenn. R. App. P. 11 application filed). In this analysis, it is not necessary that all factors weigh in favor of piercing the corporate veil. It is necessary, however, that the equities substantially favor the party requesting the court to disregard the corporate status. *Oceanics Sch., Inc. v. Barbour*, 112 S.W.3d at 140-41.

When the Department requests the courts to pierce the corporate veil in order to collect taxes, the courts' review of the facts must be tempered by two principles. First, the courts should keep in mind that the "[f]orm and structure are quite significant in business and commercial transactions, and frequently the form or structure used has controlling significance for taxes and other purposes." *Standard Adver. Agency, Inc. v. Jackson*, 735 S.W.2d 441, 443 (Tenn. 1987). Second, the courts should heed Judge Learned Hand's observation that "[a]ny one may so arrange his affairs that his taxes shall be as low as possible; he is not bound to choose that pattern which will best pay the Treasury; there is not even a patriotic duty to increase one's taxes." *Helvering v. Gregory*, 69 F.2d 809, 810 (2d Cir. 1934). Thus, as noted by the United States Supreme Court:

> While corporate entities may be disregarded where they are made the implement for avoiding a clear legislative purpose, they will not be disregarded where those in control have deliberately adopted the corporate form in order to secure its advantages and where no violence to the legislative purpose is done by treating the corporate entity as a separate legal person.

*Schenley Distillers Corp. v. United States*, 326 U.S. 432, 437 (1946); *see also Standard Adver. Agency, Inc. v. Jackson*, 735 S.W.2d at 443.

Issues relating to the piercing of the corporate veil are not ordinarily appropriate for resolution by summary judgment. *Mike v. Po Grp., Inc.*, 937 S.W.2d 790, 795 (Tenn. 1996); *see also Electric Power Bd. of Chattanooga v. St. Joseph Valley Structural Steel Corp.*, 691 S.W.2d 522, 526 (Tenn. 1985) ("Moreover, a determination of whether or not a corporation is a mere instrumentality of an individual or a parent corporation is ordinarily a question of

---

[13](...continued)

> by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities.

*FDIC v. Allen*, 584 F. Supp. at 397.

-16-

fact for the jury."). Based on our review of the record, we conclude that the Department has not carried its burden of demonstrating that it is entitled to a judgment as a matter of law by showing that the only reasonable conclusion to be drawn from the facts is that the separate legal status of CAO Holdings and CAM Management should be disregarded. While this may eventually be an appropriate conclusion following a trial on the merits, the Department has the burden of demonstrating to the trial court's satisfaction that the separate legal status of both CAO Holdings and CAM Management should be ignored for the purpose of determining whether CAO Holdings is liable for the payment of use tax on its purchase of the aircraft.

## VII.

Based on the current state of this record, we hold that neither CAO Holdings nor the State of Tennessee are entitled to a judgment as a matter of law. Accordingly, we reverse the decision of the Court of Appeals and vacate the summary judgment granted to CAO Holdings and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of this appeal in equal proportions to the State of Tennessee and CAO Holdings for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., JUSTICE