IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
February 1, 2011 Session

## BETTY SAINT ROGERS v. LOUISVILLE LAND COMPANY, ET AL.

Appeal from the Chancery Court for Bradley County
No. 04-117, 04-128      Jerri S. Bryant, Chancellor

No. E2010-00991-COA-R3-CV - FILED - MAY 25, 2011

Betty Saint Rogers ("Plaintiff")[1]  sued Louisville Land Company and Joe V. Williams, III
("Defendants") alleging claims under the Tennessee Consumer Protection Act, the Tennessee
statutes governing cemeteries, outrageous conduct, and breach of contract, among other
things.  After a non-jury trial, the Trial Court entered its final judgment awarding Plaintiff
a judgment of $250.00 for breach of contract, $45,000.00 for intentional infliction of
emotional distress, $250,000.00 in punitive damages, $37,306.25 in attorney's fees, and
$556.42 in discretionary costs.  Defendants appeal to this Court.  We find and hold that
Plaintiff did not prove intentional infliction of emotional distress, and we, therefore, reverse
the judgments for intentional infliction of emotional distress and punitive damages.  We also
find and hold that because Plaintiff abandoned her statutory claim, she was not entitled to an
award of attorney's fees pursuant to the statute, and we reverse the award of attorney's fees.
We further find and hold that Plaintiff did prove breach of contract, and we affirm the award
of damages for breach of contract, and the remainder of the Trial Court's final judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Affirmed, in part; Reversed, in part; Case Remanded**

D. MICHAEL SWINEY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS,
P.J., and JOHN W. MCCLARTY, J., joined.

---

[1]The complaint was filed as a proposed class action complaint with Ms. Rogers listed as the named
plaintiff suing on behalf of herself and all others similarly situated.  The record shows that Plaintiff did not
follow through with seeking certification from the Trial Court of the proposed class.  On December 29, 2009,
the Trial Court entered an order finding, *inter alia*, that the parties had announced to the court that the case
would proceed to trial on the individual claims of Ms. Rogers against Defendants.

David F. Hensley, Chattanooga, Tennessee, for the appellants, Louisville Land Company, a Tennessee Corporation, and Joe V. Williams, III, individually and as a stockholder of Louisville Land Company.

James F. Logan, Jr., Cleveland, Tennessee, for the appellee, Betty Saint Rogers.

# OPINION

## Background

Plaintiff filed suit in April of 2004 against Defendants as the owners of a portion of Fort Hill Cemetery ("the Cemetery")[2] located in Cleveland, Tennessee. Plaintiff's son was buried in the Cemetery in 2001. Plaintiff later purchased easements to two additional burial plots in the Cemetery. The same month that Plaintiff filed her suit, the State of Tennessee filed a separate suit against Louisville Land Company alleging, in part, that Louisville Land Company had failed to maintain the Cemetery as required by the Tennessee statutes. Plaintiff's suit was consolidated with the suit filed by the State of Tennessee.[3] The issues involved in the State's case were tried over several days in 2005 and 2006.[4] The record on appeal reveals that Plaintiff did not testify during this portion of the trial. Plaintiff's claims were tried in February of 2010, and Plaintiff testified at that time.

During the trial of the State's case, extensive testimony was given with regard to the Defendants' failure to maintain the Cemetery. Witnesses testified about Defendants' failure to keep the Cemetery mowed, to keep the Cemetery roads in good condition, and to make necessary repairs to such things as monuments and signs. After the trial of the State's case, the Trial Court found:

---

[2]For purposes of simplicity only, we refer in this Opinion to Fort Hill Cemetery with the understanding that Defendants own only a portion of the Cemetery, and the issues involved in this suit pertain only to the portion of the Cemetery owned by Defendants.

[3]The record on appeal contains Defendants' motion seeking to consolidate the two cases and Plaintiff's response in which she does not oppose consolidation. The record does not contain a copy of the Trial Court's order granting consolidation. While the order granting consolidation is not in the record, it is clear from the orders in the record and the transcripts from the trials that the Trial Court did grant the motion for consolidation.

[4]The issues involved in the State's case are not before us on appeal, and the State is not a party to this appeal.

that Louisville Land Company had failed to maintain the Cemetery as required by Tenn. Code Ann. § 46-2-306[5] so as to reflect respect for the memory of the dead in keeping with the reasonable sensibilities of survivors of those whose remains are interred in the portion of the Cemetery owned by Respondent, Louisville Land Company.

(footnote added).

During the trial of Plaintiff's claims in February of 2010, Plaintiff testified that her son died tragically in 2001 and was buried in a plot in the Cemetery previously purchased by Plaintiff's husband. After her son was buried, Plaintiff purchased easements to two additional lots in the Cemetery. With regard to her purchase of these easements, Plaintiff stated: "My thoughts at that time was that I wanted to be buried by my son. I wanted to be near him when I died."

Plaintiff testified that when she purchased the easements she asked about whether the Cemetery was maintained, mowed on a regular basis, and kept clean, and was assured that it was. She admitted that she had concerns about the maintenance of the Cemetery and stated that: "The conditions didn't improve. If anything, they deteriorated more." Plaintiff also stated: "I had vaguely noticed some of the things there that I would like to have seen look better. Mowing was one of the things, and the roads were in bad condition. There was trash at the end of the road, flowers, and that kind of thing lying around."

When asked, Plaintiff stated that she or her other son maintained her son's grave site. Plaintiff described the conditions that existed with regard to her son's grave and the Cemetery in general stating:

Some of the grass was higher than the headstones. There was headstones that had been overturned, lying there. The roads were in terrible condition. Some of the land was open. You could tell that erosion was really taking an effect on it. It wasn't cleaned. There was debris lying there. It, it just wasn't maintained. It wasn't, it wasn't mowed.

When asked what impact the conditions and taking care of her son's grave site had upon her, Plaintiff stated:

You were already grieving because you have lost someone that's very precious to you. And when you go to the cemetery, you - - this should be a time where

---

[5]Tenn. Code Ann. § 46-2-306 was transferred to § 46-1-304 effective January 1, 2007.

you are reflecting on memories of that loved one, not a time of going to weed eat the cemetery, looking as if they didn't exist, that they didn't - - they're not cared for. You're leaving someone - - when you bury them, you're leaving them in the care of the people that you buy their lot from, and this was very degrading, it was disrespectful, to say the least.

When asked how the condition of the Cemetery affected her, Plaintiff stated: "It was very, very emotional, very tearful. I knew that I had to do something to change this, and in 2004 I filed a suit with Mr. Logan; and since then I have seen some changes as a result of that; and I would like to see more." Plaintiff testified that she spoke to Defendants' employees and expressed her concerns on "[n]umerous occasions."

At the close of Plaintiff's proof, Plaintiff's counsel announced to the Trial Court that Plaintiff was abandoning her claim for relief pursuant to the Tennessee statutes regulating cemeteries. After the trial of Plaintiff's claims, the Trial Court entered its order on April 9, 2010 awarding Plaintiff a judgment against Defendants of $250.00 for breach of contract; of $45,000.00 for intentional infliction of emotional distress; of $250,000.00 in punitive damages; of $37,306.25 in attorney's fees; and of $556.42 for discretionary costs. Defendants appeal to this Court.

## **Discussion**

Although not stated exactly as such, Defendants raise five dispositive issues on appeal: 1) whether the Trial Court erred in finding and holding that outrageous conduct had been proven and awarding damages; 2) whether the Trial Court erred in awarding punitive damages and whether that award was excessive; 3) whether the Trial Court erred in awarding compensatory damages of $250 for breach of contract; 4) whether the Trial Court erred in awarding attorney's fees under Tenn. Code Ann. § 46-2-307; and, 5) whether the Trial Court erred in rendering judgment against Joe V. Williams, III personally.

Our review is *de novo* upon the record, accompanied by a presumption of correctness of the findings of fact of the trial court, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. *S. Constructors, Inc. v. Loudon County Bd. of Educ.*, 58 S.W.3d 706, 710 (Tenn. 2001).

We first address whether the Trial Court erred in finding and holding that

outrageous conduct[6] had been proven and awarding damages. There are three essential elements to a cause of action for intentional infliction of emotional distress or outrageous conduct: "(1) the conduct complained of must be intentional or reckless; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury." *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). As discussed by the *Bain* Court, this is not an easy burden to meet. *Id.* According to *Bain*:

> [T]his Court has adopted and applied the high threshold standard described in the Restatement (Second) of Torts as follows:
>
> > The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by 'malice,' or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous.'

*Bain*, 936 S.W.2d at 622-23.

> With regard to the third necessary element of intentional infliction of emotional distress, this Court has noted that:
>
> > serious mental injury is that in which "'the distress is so severe that no reasonable [person] could be expected to endure it.'" [*Miller v. Willbanks*, 8 S.W.3d 607, 615 n.4 (Tenn. 1999)] (quoting Restatement (Second) of Torts § 46 cmt. j (1965)). In *Miller v. Willbanks*, the Tennessee Supreme Court recognized that a plaintiff may establish such emotional harm by several means, such as through the plaintiff's own testimony, lay witness testimony of

---

[6]"Intentional infliction of emotional distress and outrageous conduct are not two separate torts, but are simply different names for the same cause of action." *Bain v. Wells*, 936 S.W.2d 618, 622 n.3 (Tenn. 1997).

the plaintiff's acquaintances, physical manifestations of emotional distress, evidence of nightmares, insomnia and depression, proof of psychiatric treatment, or evidence of the mental distress' intensity and duration. *Id*. at 615.

*Levy v. Franks*, 159 S.W.3d 66, 85 (Tenn. Ct. App. 2004). In *Miller v. Willbanks*, our Supreme Court emphasized:

> Although the plaintiff is generally not required to present expert testimony to validate the existence or severity of a mental injury, we emphasize that the evidence must establish that the plaintiff's mental injury is serious or severe.
>
> It is only where [the mental injury] is extreme that the liability arises. Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress is so severe that no reasonable [person] could be expected to endure it.

*Miller v. Willbanks*, 8 S.W.3d 607, 615 n.4 (Tenn. 1999) (quoting Restatement (Second) of Torts § 46 cmt. j (1965)).

We begin our analysis by noting that in support of her argument that the Trial Court did not err in awarding her damages for intentional infliction of emotional distress, Plaintiff cites to cases involving mutilation, negligent embalming, and wrongful disinterment of a dead body. These cases, however, are distinguishable from the case now before us on appeal. The case now before us involves issues of cemetery maintenance and not wrongs committed directly upon a dead body or the right of control of or possession of a dead body as do the cases relied on by Plaintiff. As such, we find these cases factually distinguishable from the case now before us on appeal.

We sympathize with Plaintiff who clearly went through a terrible and difficult time losing her son and dealing with Defendants in an attempt to insure that the Cemetery was properly maintained. The record on appeal reveals that until Plaintiff took action, the Cemetery was not being properly maintained as required by the Tennessee statutes.

Unfortunately for Plaintiff, however, the evidence in the record with regard to her alleged damages for intentional infliction of emotional distress is, at best, sparse. In order to prevail on her claim for intentional infliction of emotional distress, Plaintiff was required to prove that she suffered *severe* mental injury as a result of Defendants' conduct.

Plaintiff's testimony shows that Plaintiff felt that Defendants' actions, or lack thereof, were degrading and disrespectful, and that as a result "[i]t was very, very emotional, very tearful." The record, however, is devoid of any evidence that Plaintiff suffered from any other physical manifestations of emotional distress. There is no evidence that Plaintiff suffered from nightmares, insomnia, depression, loss of weight, or inability to work, socialize, or lead her day-to-day life. There is no evidence that Plaintiff sought or obtained any psychiatric, psychological, or medical treatment for her alleged mental distress. Furthermore, there is no proof whatsoever regarding the duration of time that Plaintiff was "very tearful."

While Plaintiff understandably was distressed and grief-stricken by the tragic death of her son, the evidence in the record on appeal preponderates against a finding that Plaintiff suffered a severe mental injury as a result of Defendants' intentional infliction of emotional distress. Plaintiff's testimony that "[i]t was very, very emotional, very tearful" is the only proof presented by Plaintiff as to the emotional impact Defendants' conduct had on her. Such evidence, by itself, is insufficient to establish that Plaintiff suffered a serious or severe mental injury as a result of Defendants' conduct. As the record does not show that Plaintiff suffered a severe mental injury as a result of Defendants' actions, an award of damages for intentional infliction of emotional distress was not proper. We, therefore, reverse the award of $45,000.00 for intentional infliction of emotional distress.

We next turn to the issue of whether the Trial Court erred in awarding punitive damages and whether that award was excessive. Punitive damages may be awarded only if actual damages have first been awarded. *E.g., Roy v. Diamond*, 16 S.W.3d 783, 791 (Tenn. Ct. App. 1999). As we have held that Plaintiff did not prove intentional infliction of emotional distress and have reversed the award of damages for intentional infliction of emotional distress, punitive damages are inappropriate. We, therefore, reverse the award of punitive damages.

Next, we consider whether the Trial Court erred in awarding compensatory damages of $250 for breach of contract. As this Court has stated: "The essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *ARC Lifemed, Inc. v. AMC-Tennessee, Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005) (quoting *Custom Built Homes v. G.S. Hinsen Co., Inc.*, No. 01A01-9511-CV-00513, 1998 Tenn. App. LEXIS 89, at *8 (Tenn. Ct. App. Feb. 6, 1998), *no appl. perm. appeal filed*).

The record on appeal reveals that Plaintiff had a contract only with Louisville Land Company with regard to the easements for the two burial plots she purchased after her son was buried in the Cemetery. The Trial Court found that Plaintiff's contract with

-7-

Louisville Land Company:

> provided the plaintiff with a right to bury in a specific location in a cemetery. In this case, in the Fort Hill Cemetery.

> Implied in that contract is the statutory - - I'm finding the statutory crema - - cemetery language and obligations that become impliedly part of that contract. She bought a lot in a cemetery and had the right to assume that the cemetery would follow the statutes, rules, and regulations of the state of Tennessee; and this one did not.

> The defendants have breached the implied provisions of the contract.

The evidence in the record on appeal does not preponderate against these findings made by the Trial Court. Thus, Plaintiff proved that she had a contract with Louisville Land Company and that the contract was breached when it did not follow the rules and regulations of the state of Tennessee applicable to cemeteries.

Furthermore, Plaintiff testified that as a result of defendant Louisville Land Company's breach of the contract, she did work to maintain her son's grave site in the Cemetery. As such, Plaintiff proved damages in the form of time and effort spent doing maintenance in the Cemetery, including mowing, weed-eating, and cleaning up trash or debris. We hold that there was adequate proof to support an award of breach of contract damages in this case.

Defendants argue on appeal that the award of $250 was an arbitrary number and that there was no proof of actual damages. As this Court has stated:

> The courts will allow recovery even if it is impossible to prove the exact amount of damages from the breach of contract. Otherwise, in certain instances, the courts would be powerless to help some wronged parties. "Exact justice is not always attained, and the law does not require exactness of computation in suits that involve questions of damages growing out of contract [or] tort." *Provident Life and Accident Ins. Co. v. Globe Indemnity Co.*, 156 Tenn. 571, 576, 3 S.W.2d 1057 (1928).… Uncertain and speculative damages are prohibited only when the existence of damage is uncertain, not when the amount is uncertain. When there is substantial evidence in the record and reasonable inferences may be drawn from that evidence mathematical certainty is not required. [*Coverdell v. Mid-South Farm Equipment Assoc., Inc.*, 335 F.2d 9, 14 (6th Cir. 1964)].

*Cummins v. Brodie*, 667 S.W.2d 759, 765 (Tenn. Ct. App. 1983).

Plaintiff proved the elements of her claim for breach of contract. We, therefore, affirm the award of $250.00 for breach of contract.

We next consider whether the Trial Court erred in awarding attorney's fees under Tenn. Code Ann. § 46-2-307.[7] We note that Plaintiff's counsel at trial announced to the Trial Court that Plaintiff was abandoning her claims under the statute. As a result, the Trial Court did not render a decision with regard to these claims. As Plaintiff abandoned her claims pursuant to the statute and no decision was rendered regarding whether Plaintiff was or was not able to prove such claims, she cannot claim that she is entitled to attorney's fees pursuant to the statute. It is not necessary for us to determine whether Plaintiff would have been entitled to attorney's fees pursuant to Tenn. Code Ann. § 46-2-307 if she had pursued her claims under the statute successfully, and we make no determination whatsoever with regard to that issue. We reverse the award of $37,306.25 in attorney's fees.

Finally, we consider whether the Trial Court erred in rendering judgment against Joe V. Williams, III personally. Our determination of Plaintiff's preceding issues has resulted in Plaintiff obtaining a judgment for breach of contract. The record on appeal reveals that Plaintiff's contract was with Louisville Land Company, not with Joe V. Williams, III personally. As such, Plaintiff could obtain a judgment against Joe V. Williams, III personally only if she proved that it was proper to pierce the corporate veil.

As our Supreme Court has instructed:

There is no question that the courts may, in appropriate circumstances, pierce the corporate veil and attribute the actions of a corporation to its shareholders. *See generally Cambio Health Solutions, LLC v. Reardon*, 213 S.W.3d 785, 790 (Tenn. 2006); *Oceanics Sch., Inc. v. Barbour*, 112 S.W.3d 135, 140-42 (Tenn. Ct. App. 2003). To pierce the corporate veil, a court must be convinced that the separate corporate entity "is a sham or a dummy" or that disregarding the separate corporate entity is "necessary to accomplish justice." *Oceanics Sch., Inc. v. Barbour*, 112 S.W.3d at 140 (quoting *Schlater v. Haynie*, 833 S.W.2d 919, 925 (Tenn. Ct. App. 1991)). Tennessee's courts have consistently used the factors identified in *FDIC v. Allen*, 584 F. Supp. 386, 397 (E.D. Tenn. 1984) to determine whether a corporation's separate legal identity

---

[7]Tenn. Code Ann. § 46-2-307 was transferred to § 46-1-305 effective January 1, 2007.

should be ignored.[8] *See, e.g., Pamperin v. Streamline Mfg., Inc.*, 276 S.W.3d 428, 438 (Tenn. Ct. App. 2008); *Altice v. NATS, Inc.*, No. M2007-00212-COA-R3-CV, 2008 WL 1744571, at *2-3 (Tenn. Ct. App. Apr. 15, 2008) (No Tenn. R. App. P. 11 application filed). In this analysis, it is not necessary that all factors weigh in favor of piercing the corporate veil. It is necessary, however, that the equities substantially favor the party requesting the court to disregard the corporate status. *Oceanics Sch., Inc. v. Barbour*, 112 S.W.3d at 140-41.

*CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 88-89 (Tenn. 2010) (footnote in original but renumbered).

The evidence in the record on appeal is insufficient to support a finding that "the separate corporate entity 'is a sham or a dummy' or that disregarding the separate corporate entity is 'necessary to accomplish justice.'" *Id*. As such, we hold that Joe V. Williams, III cannot be held personally liable for Plaintiff's judgment against Louisville Land Company. We therefore, reverse that portion of the Trial Court's final judgment awarding damages for breach of contract against Joe V. Williams, III personally.

The outcome of this appeal is not what this Court would have preferred. We sympathize with Plaintiff who clearly has had a difficult time, first tragically losing her son, and then dealing with Defendants who, quite obviously, as the Trial Court found:

---

[8] In *FDIC v. Allen*, the United States District Court stated:

Factors to be considered in determining whether to disregard the corporate veil include not only whether the entity has been used to work a fraud or injustice in contravention of public policy, but also: (1) whether there was a failure to collect paid in capital; (2) whether the corporation was grossly undercapitalized; (3) the nonissuance of stock certificates; (4) the sole ownership of stock by one individual; (5) the use of the same office or business location; (6) the employment of the same employees or attorneys; (7) the use of the corporation as an instrumentality or business conduit for an individual or another corporation; (8) the diversion of corporate assets by or to a stockholder or other entity to the detriment of creditors, or the manipulation of assets and liabilities in another; (9) the use of the corporation as a subterfuge in illegal transactions; (10) the formation and use of the corporation to transfer to it the existing liability of another person or entity; and (11) the failure to maintain arms length relationships among related entities.

*FDIC v. Allen*, 584 F. Supp. at 397.

failed to maintain the Cemetery as required by Tenn. Code Ann. § 46-2-306 so as to reflect respect for the memory of the dead in keeping with the reasonable sensibilities of survivors of those whose remains are interred in the portion of the Cemetery owned by Respondent, Louisville Land Company.

Unfortunately, however, given the evidence in the record before us on appeal as applied to the controlling case law, we are constrained to decide as we have.

## Conclusion

The judgment of the Trial Court is reversed as to the award of damages for intentional infliction of emotional distress, punitive damages, attorney's fees, and breach of contract against Joe V. Williams, III personally. The remainder of the Trial Court's judgment is affirmed, and this cause is remanded to the Trial Court for collection of the costs below. Exercising our discretion, the costs on appeal are assessed against the appellant, Louisville Land Company, a Tennessee Corporation, and its surety.

_____
D. MICHAEL SWINEY, JUDGE