## Wolf v. First National Bank of Camden, Appellant.

*Banks and banking—Charging off bad debt—Continuing liability of debtor.*

The mere fact that a bank charges-off a bad debt on its books, does not relieve the debtor from liability to pay the debt. Such charging-off for any reason short of payment or liquidation will not absolve the debtor from meeting his obligation.

Argued Nov. 8, 1916; Appeal, No. 238, Oct. T., 1916, by defendants, from decree of C. P. No. 2, Philadelphia Co., Dec. T., 1914, No. 934, on bill in equity in case of Martin L. Wolf and Hannah Wolf his wife v. First Nat. Bank of Camden, New Jersey, David Baird et al. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Reversed.

Bill in equity for an injunction and an account.

The facts are stated in the opinion of the Superior Court.

*Error assigned,* among others, was the decree of the court.

*John Weaver,* for appellants.

*Joseph A. McKeon,* with him *Thomas J. Norris,* for ap‚ pellees.

OPINION BY KEPHART, J., March 9, 1917:

After a careful consideration of the evidence in this case, we are satisfied that the decree of the court below should be reversed. Hannah Wolf, wife of Martin L. Wolf, who was a retail liquor dealer, owned a property that was heavily encumbered. The defendant bank was a creditor in an amount which, with prior encumbrances, was much in excess of the value of this property. The business as conducted by Wolf, owing to improper management, was not successful, and it was deemed advisable by the officials of the bank to secure possession and title to the property. To facilitate any possible sale and to prevent Wolf from obstructing an advantageous sale, the legal title to the property was placed in Muller. Subsequently a manager, in the person of Carroll, was secured to take charge of the establishment. A disagreement arose between Carroll and Wolf, the result of which was an agreement to sell the property and transfer

the license from Wolf to Carroll. The appellees contend that when these matters were under consideration, and at the time the agreement was made to transfer the license from Wolf to Carroll, the appellants, by a parol contemporaneous agreement, promised to give Mrs. Wolf $5,000 and to pay to Wolf $20 per week. The appellants having denied that any such agreement existed, the appellees filed this bill, praying (1) for an injunction to restrain Muller from conveying or encumbering the real estate, (2) for an accounting from the defendants for the profits of the sale, (3) for a decree directing the immediate reconveyance of the property to Mrs. Wolf, and (4) that the mortgage held by the defendant bank should be declared void and canceled. All these prayers for relief were, in the final adjudication, denied by the court below. There is no specific prayer in the bill asking for the payment of a certain sum of money. The court below deemed the settlement of this controversy incidental to the questions involved in the bill, and found as a fact that some understanding was had between the defendant and the complainants concerning the promise to give $5,000 in the event of the sale of the property, and sustained the plaintiffs' contention that such promise had been made. We do not feel disposed to discuss that finding, inasmuch as this decree must be reversed on other grounds. If the question was ultimately material to the subject-matter of this litigation, we would discuss it at length, but we will assume this finding of the court to be correct, and without discussing the authority of the court to enter this decree for the payment of a sum of money, we will proceed to a consideration of the merits of the case.

The property sold for $50,000 and it was subject to an indebtedness, including interest, taxes, water rent, and interest thereon, with penalties added, amounting to $31,549, according to the adjudication filed by the court. In addition to this, the appellants' claim, prior to the agreement herein sought to be enforced, and as found

by the court below, was $24,277.99.  From this amount
the court deducts the $5,000 claimed by Hannah Wolf,
one of the appellees, and in addition thereto, the sum of
$1,500, leaving the net balance due appellant of $17,-
777.99, which, with the indebtedness already mentioned,
made a total of $49,326.99.  The difference between this
sum and the purchase-price, $673.01, the court awards
to Hannah Wolf, one of the appellees.

The only evidence to support the credit of $1,500 comes
from one of the bank's witnesses, a bookkeeper, who tes-
tifies that they charged-off $6,500 to profit and loss from
the appellant bank's account, and refers to the balance
as the present state of the appellees' indebtedness.  This
witness did not know why he called the $6,500 charged-
off a bad account, and the $16,000 left standing a good
account.  He did not know "what the difference in quali-
ty was."  If a debtor's obligation to a bank is to be con-
sidered liquidated when the officers of a bank, because of
prudent business methods, or because of an order from
a bank examiner, charge-off the books of the bank doubt-
ful accounts or notes as unsound paper, it would work a
great hardship to a banking institution and would be
unjust and unfair.  Many of these obligations are after-
wards paid and the money received forms a part of the
bank's assets, yet this is the only evidence in this record
to support this credit of $1,500.  The charging-off by the
bank for any reason short of payment or liquidation will
not relieve a debtor from meeting that obligation.  While
the charging-off in this case, if it was done at the time
this so-called promise was made, and the evidence does
not so show, might be some evidence to support the claim
of $5,000, it was not sufficient evidence to justify an ad-
ditional credit of $1,500.  Nor was the additional
evidence that sometime before this the appellant
was willing to accept $10,000 for the entire indebt-
edness; as the court below properly found the mortgages
and notes held by the bank, largely in excess of this sum,
were given for a valuable consideration.  There is no evi-

dence attacking their integrity and if the bank was willing, by reason of the conduct of Wolf, to have accepted a smaller sum in satisfaction of his debt, there is nothing in this record, nor was there any consideration moving toward it, which bound it to such acceptance. It did not furnish a consideration for the abatement of $1,500 which took place sometime afterwards and entirely unrelated to the acceptance of the $10,000 herein mentioned.

The second, third, fourth, fifth, sixth, seventh and eighth assignments of error are sustained. The decree of the court below is reversed; the record is remitted, and it is directed that a decree be entered dismissing the bill, at the cost of the appellees.