# IN THE COURT OF APPEALS OF TENNESSEE
# AT NASHVILLE
November 20, 2014 Session

## SYNOVUS BANK v. DAVID A. PACZKO, ET AL.

**Appeal from the Chancery Court for Williamson County**
**No. 42540     Robbie T. Beal, Judge**

_____

### No. M2014-00897-COA-R3-CV – Filed May 29, 2015

_____

Bank sued borrowers on a lost or destroyed promissory note. Borrowers, among other defenses, denied that the note was in default and the amount due. Borrowers also claimed that bank had destroyed the note with the intention of discharging the obligation. On cross-motions for summary judgment, the trial court entered judgment in favor of bank. Borrowers appeal, claiming the affidavits filed in support of the bank's motion for summary judgment were deficient, the existence of disputed material facts, the indebtedness had been discharged, and that further discovery should have been permitted by the trial court. We vacate and remand.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded

W. NEAL MCBRAYER, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and RICHARD H. DINKINS, J., joined.

Jonathan L. Miley (at oral argument), Nashville, Tennessee, and Carol A. Molloy (on brief), Lynnville, Tennessee, for the appellants, David A. Paczko and Barbara McCafferty Paczko.

Justin T. Hayden and David M. Smythe, Nashville, Tennessee, for the appellee, Synovus Bank.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

On April 11, 2008, Barbara McCafferty Paczko, on behalf of herself and as attorney-in-fact for David A. Paczko, executed a Home Equity Line of Credit Agreement, containing a promise to pay to the order of The Bank of Nashville "the full amount of all advances." The line of credit agreement obligated The Bank of Nashville to make advances to the Paczkos, not to exceed at any one time the principal amount of $162,850. The Paczkos secured their obligations under the line of credit agreement by executing a deed of trust, granting an interest in improved real property known as 2750 Rock Wall Road, and located in Nashville, Tennessee.

The Bank of Nashville merged with Synovus Bank ("Synovus") effective June 30, 2010. By both applicable law and the plan of merger,[1] Synovus was vested with "[t]he title to all real estate and other property owned by, and every contract right possessed by, each corporation or entity party to the merger . . . without reversion or impairment, without further act or deed, and without any conveyance, transfer, or assignment having occurred." Ga. Code Ann. § 14-2-1106(a)(2) (West 2003). Also by law, The Bank of Nashville ceased to exist as a separate legal entity. *Id.*

On August 10, 2010, an attorney on behalf of "The Bank of Nashville" sent a letter to the Paczkos declaring the line of credit agreement in default. The attorney also threatened acceleration of the indebtedness if the default was not cured. Later that year, Synovus charged-off the indebtedness and reported that information to the credit reporting bureaus.

On October 2, 2013, Synovus filed suit against the Paczkos in the Chancery Court for Williamson County, alleging a default in payment under the line of credit agreement. A month later, Synovus filed a motion for summary judgment. In support of the motion, Synovus submitted the affidavit[2] of Leona Fox, a special assets officer for Synovus.

---

[1] The Agreement and Plan of Merger of The Bank of Nashville with and into Synovus Bank, which is governed by Georgia law, provides as follows:

> [A]ll rights, privileges, franchises, and interests of both [Synovus] and [The Bank of Nashville] in and to every type of property (real, personal and mixed), all debts due on whatever account, and all other choses in action and all and every other interest of or belonging to [The Bank of Nashville] shall be transferred to and vested in [Synovus] by virtue of the Merger without any further deed or transfer . . . .

[2] Ms. Fox's supplemental affidavit was filed on February 12, 2014.

After the deadline for taking depositions and just over a month before the hearing on its motion for summary judgment, Synovus filed the affidavit of Betty Benoit, a senior vice president for The Bank of Nashville, which was identified as a division of Synovus. Ms. Benoit's affidavit authenticated certain documents related to the merger of The Bank of Nashville with Synovus. The affidavit also stated that the line of credit agreement was lost or destroyed and that, according to the business records of Synovus, the line of credit agreement had not been sold or assigned and that no other entity was entitled to enforce the line of credit agreement.

The Paczkos filed a motion to strike the affidavit as both untimely and deficient. The Paczkos asserted the affidavit was deficient because it did not set forth facts that would be admissible in evidence or show affirmatively that the affiant was competent to testify to the matters in the affidavit. The Paczkos also filed a request for a continuance of the hearing on the motion for summary judgment and an opportunity to depose Ms. Benoit.

On March 20, 2014, the Paczkos filed their response to the motion for summary judgment and a cross-motion for summary judgment. The exact basis for the cross-motion for summary judgment is unclear from the record.[3] However, we can determine from Synovus's response to the cross-motion for summary judgment that the Paczkos argued that their debt was discharged or cancelled by virtue of the destruction of the line of credit agreement.

The trial court held a hearing on all pending matters on March 31, 2014. The court denied the motions to strike the affidavit of Ms. Benoit and for a continuance to conduct discovery. The trial court granted Synovus's motion for summary judgment, awarding a judgment against the Paczkos in the amount of $202,242.93 plus post-judgment interest. In its ruling on the cross-motions for summary judgment, the trial court made the following findings:

> (1) it is undisputed that the Defendants executed the Note;[4] (2) it is undisputed that the Defendants failed to pay the Note; (3) it is undisputed that Plaintiff is successor by merger to The Bank of Nashville; (4) it is undisputed that the original Note was lost or destroyed; (5) there is no sworn proof before the Court that Plaintiff intentionally destroyed the Note

---

[3] The record does not include the memorandum in support of the cross-motion for summary judgment. The cross-motion only states that "Defendant will further show that there are no genuine issues of material fact in dispute as to their cross-motion for summary judgment."

[4] The trial court and the parties refer to the line of credit agreement as a note or promissory note. A "note" is defined as "[a] written promise by one party (the *maker*) to pay money to another party (the *payee*) or to bearer." Black's Law Dictionary 1162 (9th ed. 2009). As noted above, the line of credit agreement does include a promise to pay.

or that Plaintiff ever intended to forgive or discharge the Note or waive any right to enforce the Note; (6) there is no sworn proof before the Court which would indicate that the unpaid balances of the Note, as set out in Plaintiff's business records, are incorrect or inaccurate in any way for purposes of Rule 56 of the Tennessee Rules of Civil Procedure; and (7) there is no sworn proof before the Court to indicate that the Affidavits of Plaintiff's representatives, Ms. Fox and Ms. Benoit, are not based upon personal knowledge or in any way not creditable that would prevent the entry of Summary Judgment in favor of Plaintiff.

The Paczkos appeal the grant of summary judgment.

## II. ANALYSIS

The Paczkos raise four issues on appeal. First, they claim that the affidavits filed in support of Synovus's motion for summary judgment failed to comply with Tennessee Rule of Civil Procedure 56.04. Second, they claim that disputed issues of material fact existed that precluded entry of summary judgment in favor of Synovus. Third, they claim that the trial court failed to consider the argument that their obligation under the promissory note was discharged. Finally, they claim the trial court erred in not continuing the hearing on the motion for summary judgment to allow for additional discovery.

The requirements for a grant of summary judgment are well known. Summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04; *see also Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 83 (Tenn. 2008); *Penley v. Honda Motor Co.*, 31 S.W.3d 181, 183 (Tenn. 2000); *Byrd v. Hall*, 847 S.W.2d 208, 215 (Tenn. 1993). The party moving for summary judgment bears the burden of demonstrating both that no genuine dispute of material facts exists and that it is entitled to a judgment as a matter of law. *Martin*, 271 S.W.3d at 83. Where the moving party fails to meet its burden of production, "the burden does not shift to the nonmovant, and the court must dismiss the motion for summary judgment." *Shipley v. Williams*, 350 S.W.3d 527, 535 (Tenn. 2011).

When considering cross-motions for summary judgment, the trial court "must rule on each party's motion on an individual and separate basis." *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 83 (Tenn. 2010). For each motion, the court must determine:

(1) whether genuine disputes of material fact with regard to that motion exist and (2) whether the party seeking the summary judgment has satisfied Tenn. R. Civ. P. 56's standards for a judgment as a matter of law.

> Therefore, in practice, a cross-motion for summary judgment operates exactly like a single summary judgment motion.

*Id*. (citations omitted). For the respective competing motions, the trial court must view the evidence in the light most favorable to the opposing party and draw all reasonable inferences in the opposing party's favor. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997). The court is not to "weigh" the evidence when evaluating a motion for summary judgment or substitute its judgment for that of the trier of fact. *Martin*, 271 S.W.3d at 87; *Byrd*, 847 S.W.2d at 211. The denial of a cross-motion for summary judgment does not necessitate the granting of the competing cross-motion. *CAO Holdings, Inc*., 333 S.W.3d at 83.

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin*, 271 S.W.3d at 84; *Blair v. West Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763. Accordingly, this Court must review the record de novo and make a fresh determination of whether the requirements of Tennessee Rule of Civil Procedure 56 have been met. *Eadie v. Complete Co*., 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763.

## A. SUFFICIENCY OF AFFIDAVITS

Tennessee Rule of Civil Procedure 56 specifies the requirements for affidavits filed in support of motions for summary judgment. Affidavits must "be made on personal knowledge, . . . set forth such facts as would be admissible in evidence, and . . . show affirmatively that the affiant is competent to testify to the matters stated therein." Tenn. R. Civ. P. 56.06. The Paczkos argue that the affidavits filed in support of Synovus's motion for summary judgment are deficient. Specifically, the Paczkos assert that neither Ms. Fox[5] nor Ms. Benoit possessed the necessary personal knowledge or competency to testify to the matters contained in their affidavits.

Evidence, including the substance of affidavits, filed in "support or to oppose a motion for summary judgment must be admissible." *Shipley*, 350 S.W.3d at 564-65 & n.12 (Koch, J., concurring in part and dissenting in part).

> To be admissible, evidence at the summary judgment stage must satisfy the requirements of the Tennessee Rules of Evidence, as well as any other requirements controlling the admissibility of particular types of evidence.

---

[5] Synovus notes that, in the trial court, the Paczkos only moved to strike the affidavit of Ms. Benoit. However, that does not relieve us of our obligation to make a fresh determination of whether the Rule 56 requirements have been satisfied.

Thus, evidence that would be substantively inadmissible at trial would likewise be inadmissible at the summary judgment stage.

*Id*. at 565 (Koch, J., concurring in part and dissenting in part). An abuse of discretion standard applies to decisions regarding the admissibility of evidence filed in support of or in opposition to motions for summary judgment. *Id*. at 552 (Koch, J., concurring in part and dissenting in part).

Under the Tennessee Rules of Evidence, "[a] witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter." Tenn. R. Evid. 602. On a motion for summary judgment, Tennessee Rule of Civil Procedure 56.05 and Tennessee Rule of Evidence 602 taken together preclude the consideration of factual statements based on an affiant's "information and belief." *See Fowler v. Happy Goodman Family*, 575 S.W.2d 496, 498 (Tenn. 1978) (holding that an affidavit based on the affiant's own belief does not satisfy the requirements of Rule 56.05); *Keystone Ins. Co. v. Griffith*, 659 S.W.2d 364, 366 (Tenn. Ct. App. 1983) (stating that an affidavit as to what the affiant believes or is "authorized" to state does not satisfy Rule 56.05).

We find much of the substance of Ms. Fox's affidavits inadmissible. A statement that an affidavit is made on personal knowledge generally satisfies the competency requirement of Rule 56 "where her personal knowledge can be reasonably inferred based on the affiant's position and other facts contained in the affidavit." *Wells Fargo Bank v. Hammond*, 22 N.E.3d 1140, 1147 (Ohio Ct. App. 2014). In her first affidavit, Ms. Fox asserts that she has personal knowledge as to "all the matters hereinafter set forth," including the Paczkos' default and amount due. She also identifies herself as a special assets officer of Synovus. However, she does not describe her duties nor does the affidavit include other facts from which her personal knowledge and competency can be inferred. Again in her supplemental affidavit, Ms. Fox states she has knowledge of Synovus's business books and records. Yet she concedes to "hav[ing] no personal knowledge . . . regarding the negotiation or execution of the loan documents at issue."

Although there are also deficiencies in Ms. Benoit's affidavit, the Paczkos do not dispute the factual matters contained in her affidavit. As with the execution of the line of credit agreement, the parties do not dispute that The Bank of Nashville merged into Synovus. The parties also do not dispute the destruction of the line of credit agreement. In the trial court, the Paczkos argued the destruction of the line of credit agreement as proof that their obligation had been discharged. They have maintained that position on appeal, which we discuss later.

## B. Material Facts

To assist the trial court in determining whether summary judgment is proper, the moving party must set forth "material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. As used in Rule 56.03, "[t]he phrase "genuine issue" . . . refers to genuine factual issues and does not include issues involving legal conclusions to be drawn from the facts." *Byrd*, 847 S.W.2d at 211. The Paczkos argue that there are two genuine factual issues: (1) the existence of a default and (2) the amount due under the line of credit agreement. We agree.

To recover for a breach of contract, a plaintiff must prove three elements: "(1) the existence of a contract, (2) breach of the contract, and (3) damages which flow from the breach." *Life Care Ctrs. of Am., Inc. v. Charles Town Assocs. Ltd. P'ship*, 79 F.3d 496, 514 (6th Cir. 1996), *cited in C & W Asset Acquisition, LLC v. Oggs*, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007) (dealing with a loan agreement). As noted above, the first element is not at issue. The second element, breach of the contract, is sometimes stated as "nonperformance amounting to a breach of the contract." *Custom Built Homes v. G.S. Hinsen Co.*, No. 01A01-9511-CV-00513, 1998 WL 960287, at *3 (Tenn. Ct. App. Feb. 6, 1998). In their answer, the Paczkos denied that they were in default and the amount due under the line of credit agreement. Synovus attempted to demonstrate the Paczkos' nonperformance under the agreement and the associated damages through the affidavits of Ms. Fox.

With respect to default, Ms. Fox's affidavit contains only the following statement: "The Defendants defaulted in making payments to Plaintiff under the Note and, despite a written request to the Defendants dated August 30, 2013 to reinstate the Note, the Defendants failed to cure the payment default and reinstate the Note." The affidavit states nothing about the nature of the payment default. With respect to the amount outstanding under the agreement, the affidavit states "[a]s of August 27, 2013, a payoff balance of $187,724.61 was owed under the Note." The affidavit goes on to state the amount of daily interest accrual, and then identifies an exhibited "payoff screen."

Ms. Fox's affidavits contain no details regarding payments received or missed payments on the line of credit agreement. The statement that the Paczkos "defaulted in making payments" is not a statement of fact, rather it is a conclusion of law to be drawn from facts.

> The question of whether facts established by a party constitute a breach of contract is one of law to be determined by the court, but whether facts sufficient to constitute a breach of contract have been established is ordinarily a question of fact to be determined by the trier of fact, under proper instructions from the court. Thus, when the facts are undisputed or conclusively established or can lead to only one reasonable answer, the

question whether there has been a breach of a contract is one of law for the court. When the facts are in dispute, or reasonable persons could differ as to the inferences to be drawn from the facts, the question must be determined by the trier of fact, and under such circumstances summary judgment is improper.

17B C.J.S. *Contracts* § 1034 (2015) (footnotes omitted). The necessary facts that would have permitted the legal conclusion that the Paczkos were in default are simply absent from the materials filed in support of Synovus's motion for summary judgment.

In this instance, the line of credit agreement provides for repayment as follows:

During the 10 year Draw/Repayment Period, the Periodic Minimum Payment for each billing cycle shall be the FINANCE CHARGE only shown on the periodic statement of the Account, with the entire outstanding balance of the Account due on the Maturity Date (the next day following the end of the Repayment Period).

The line of credit agreement also provides for a monthly billing cycle and a maturity date of April 11, 2018. Assuming the alleged payment default relates to the Periodic Minimum Payment, Synovus is required to establish both the monthly amount billed on the relevant periodic statement or statements and the payments made by the Paczkos. With those facts, the trial court would be able to conclude whether there had been a breach of the contract or a default.

The third element of proof for a party alleging breach of contract is the damages flowing from the breach. A party seeking an award of damages must prove its damages "within a reasonable degree of certainty." *Redbud Coop. Corp. v. Clayton*, 700 S.W.2d 551, 561 (Tenn. Ct. App. 1985). The proof must be "of such certainty as the nature of the case permits and such as to lay a foundation enabling the triers of the facts to make a fair and reasonable assessment of damages." *Wilson v. Farmers Chem. Ass'n*, 444 S.W.2d 185, 189 (Tenn. Ct. App. 1969).

In this case, the affidavit of Ms. Fox presented the amount outstanding under the line of credit agreement by stating "[a]s of August 27, 2013, a payoff balance of $187,724.61 was owed under the Note." The affidavit goes on to specify the daily interest accrual. Ms. Fox's affidavit also identifies a "payoff screen" reflecting the amounts outstanding but otherwise does not satisfy the requirements of the Tennessee Rules of Evidence for admission of the "payoff screen."[6] The affidavit contains no facts

---

[6] The printout would be excluded by the hearsay rule unless it met the requirements of Tennessee Rule of Evidence 803. Under that rule,

- 8 -

explaining how the payoff amount was calculated or a history of payments by the Paczkos.

Given the Paczkos' denials regarding the amounts outstanding under the line of credit agreement, Synovus had the burden to the lay the foundation necessary for the trial court to make a fair and reasonable assessment of damages. "In an action to collect a debt, the plaintiff creditor bears the burden of proving the existence of the debt and that the debtor is indebted to the creditor in a certain amount." *LVNV Funding, LLC v. Mastaw*, No. M2011-00990-COA-R3-CV, 2012 WL 1534785, at *5 (Tenn. Ct. App. Apr. 30, 2012) (citing *Bellsouth Adver. & Publ'g. Corp. v. Wilson*, No. M2006-00930-COA-R3-CV, 2007 WL 2200170, at *5 (Tenn. Ct. App. July 30, 2007)). In the case of a promissory note, this may be accomplished by offering testimony or documentation explaining the method of calculating the specific amounts sought. *See, e.g.*, *Lockwood v. Fed. Deposit Ins. Corp.*, 767 S.E.2d 829, 834 (Ga. Ct. App. 2014) (On a motion for summary judgment, "FDIC presented the payment-history records showing a definite amount outstanding on the principal balance and also submitted an affidavit from the asset manager authenticating the records."). Because the necessary foundation is lacking in Ms. Fox's affidavits, we cannot conclude that no genuine factual issue exists concerning the amount due under the line of credit agreement.

## C. DISCHARGE OF OBLIGATION

Although we find that there are disputed material facts that preclude entry of summary judgment in favor of Synovus, the Paczkos argue that they were entitled to a judgment of dismissal because any debt under the line of credit agreement had been discharged. In support of this contention, the Paczkos point to the undisputed facts that the line of credit agreement has been either lost or destroyed and the obligation under the agreement was reported as "charged off" by Synovus. We conclude neither fact supports their argument.

For their argument that destruction of the line of credit agreement constitutes a discharge of their obligation, the Paczkos rely upon provisions of Article 3 of the

---

A . . . data compilation, in any form, of acts, events, conditions, opinions, or diagnoses made at or near the time by or from information transmitted by a person with knowledge and a business duty to record or transmit if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the . . . data compilation, all as shown by the testimony of the custodian or other qualified witness or by certification that complies with Rule 902(11) or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

Tenn. R. Evid. 803(6). Although there is an attempt to satisfy Rule 803(6) in Ms. Fox's supplemental affidavit, the attempt falls short of what is required.

Uniform Commercial Code as adopted in Tennessee. Under Tennessee Code Annotated § 47-3-604,

> [a] person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument (i) by an intentional voluntary act, such as surrender of the instrument to the party, destruction, mutilation, or cancellation of the instrument, cancellation or striking out of the party's signature, or the addition of words to the instrument indicating discharge . . . .

Tenn. Code Ann. § 47-3-604(a) (2001). The word "instrument" as used in Article 3 "means a negotiable instrument." Tenn. Code Ann. § 47-3-104(b) (Supp. 2014).

Leaving aside the absence of proof in the record that the line of credit agreement was destroyed by "an intentional voluntary act," there are at least two significant problems with the Paczkos' argument. First, because the line of credit agreement is not a negotiable instrument, the statute is not applicable. Tenn. Code Ann. § 47-3-102(a) (2001) ("This chapter applies to negotiable instruments."). To be a negotiable instrument, the promise or order to pay must be for "a fixed amount of money." Tenn. Code Ann. § 47-3-104(a) (Supp. 2014); *Ingram v. Earthman*, 993 S.W.2d 611, 625 (Tenn. Ct. App. 1998) (stating that if a note is not for a "sum certain," it is not negotiable); 11 Am. Jur. 2d *Bills and Notes* § 84 (2015) ("A note given to secure a line of credit under which the amount of the obligation varies, depending on the extent to which the line of credit is used, is not negotiable."). Here, the promise is not for a fixed amount of money but rather for "the full amount of all advances." Consequently, the Paczkos' reliance on the statute is misplaced.[7]

Second and perhaps more importantly, the Paczkos agreed that the line of credit agreement could be destroyed without impacting their liability. It is well settled that "[t]he rights and obligations of contracting parties are governed by their written agreements." *Hillsboro Plaza Enters. v. Moon*, 860 S.W.2d 45, 47 (Tenn. Ct. App. 1993). In pertinent part, the line of credit agreement provides:

> 21. RECORD RETENTION. Borrower acknowledges and agrees that Lender may from time to time retain information about Borrower and documents Borrower signs, including, but not limited to, this Agreement and documents related to the Account (collectively, the "documents") electronically (such as in optical, digital or other electronic storage and retrieval system) and destroy the original documents. Lender and Borrower agree and intend that any document produced by them from the electronic

---

[7] For the same reason, Synovus's and the Paczkos' reliance on Tennessee Code Annotated § 47-3-309 (Supp. 2006), dealing with enforcement of lost, destroyed, or stolen instruments, is misplaced.

- 10 -

media shall have the same legal force and effect as the original documents for all purposes and in all circumstances, including, but not limited to, collection, admissibility, authentication, or any other legal purpose.

We see no basis to deprive Synovus of its contractual right to use copies of the line of credit agreement or to permit the Paczkos to escape their contractual obligation to honor copies of the original documentation. "Tennessee law favors [both] allowing competent parties to strike their own bargains[ ] and . . . enforcing written contracts." *Allmand v. Pavletic*, 292 S.W.3d 618, 637 (Tenn. 2009) (Koch, J., dissenting) (citations omitted).

We find the fact that the indebtedness was "charged-off" and reported as such to credit reporting agencies irrelevant to the Paczkos' liability. Most commonly, to "charge off" means "to treat (an account receivable) as a loss or expense because payment is unlikely; to treat as a bad debt." Black's Law Dictionary 266 (9th ed. 2009). Charging-off an indebtedness does not cancel the debt or impact the obligor's liability. *Wilkirson v. Thompson*, 104 S.W.2d 1115, 1116 (Tex. Ct. App. 1937). As one court noted, "[i]f a debtor's obligation to a bank is to be considered liquidated when the officers of a bank, because of prudent business methods, or because of an order from a bank examiner, charge-off the books of the bank['s] doubtful accounts or notes as unsound paper, it would work a great hardship to a banking institution and would be unjust and unfair." *Wolf v. First Nat. Bank*, 66 Pa. Super. 72, 75 (Pa. Super. Ct. 1916).

## D. DENIAL OF THE REQUEST FOR CONTINUANCE

Our conclusion that Synovus failed to demonstrate the absence of disputed material facts necessitates that this case be remanded. As such, we decline to address the Paczkos' final issue, whether the trial court properly denied the request under Tennessee Rule of Civil Procedure 56.07 for a continuance.

## III. CONCLUSION

Because we find disputed material facts, we vacate the judgment of the trial court and remand with instructions to deny each party's motion for summary judgment and for further proceedings consistent with this opinion.

_____
W. NEAL McBRAYER, JUDGE