IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 5, 2018 Session

## ADRIAN LYNN MCWILLIAMS ET AL. v. BRENDA CHANEY VAUGHN ET AL.

**Appeal from the Chancery Court for Hamilton County**
**No. 03-0219, 11-0697      Jeffrey M. Atherton, Chancellor**

_____

**No. E2017-01942-COA-R3-CV**

_____

Following a bench trial, the Hamilton County Chancery Court determined that Appellants had converted the assets of a check-cashing business, to the detriment of the majority shareholder, Appellee. Appellants argue that the trial court erred in a 2011 decision to grant Appellee partial summary judgment and to prohibit Appellants from raising any claims or defenses based on the Uniform Fraudulent Transfer Act at trial. Because we have determined that the trial court's 2011 grant of summary judgment to Appellee was erroneous, the decision of the trial court is vacated and remanded

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Vacated and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., AND JOHN W. MCCLARTY, J., joined.

Phillip E. Fleenor, Chattanooga, Tennessee, for the appellants, Adrian Lynn McWilliams and Cash Mart, LLC.

Randall D. Larramore, Chattanooga, Tennessee, for the appellee, Brenda Chaney Vaughn

### MEMORANDUM OPINION[1]

_____

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

> This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION," shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

## Background

The present case commenced in 2003 and has been described by the parties as a "business divorce."[2] In 1997, Cash Mart, LLC ("Cash Mart") registered as a Tennessee limited liability company, and became engaged in the business of check cashing and deferred presentment services. Adrian Lynn McWilliams ("McWilliams" or, collectively with Cash Mart, "Appellants") and Stuart Vaughn were the initial members of Cash Mart, while Oscar Vaughn ("Mr. Vaughn") was a long-time employee of Cash Mart. On May 23, 2001, McWilliams and Mr. Vaughn entered into an employment agreement and option contract in which they, along with Cash Mart, agreed that Mr. Vaughn was granted an option to purchase 73.33% of Cash Mart for a sum of $100.00. Around the same time, Stuart Vaughn and McWilliams executed an agreement by which Stuart Vaughn sold his remaining interest in Cash Mart to McWilliams. As such, McWilliams became the sole member of Cash Mart, while Mr. Vaughn continued to be employed with Cash Mart and was tasked with maintaining the books and records for the business along with other various duties.

On February 21, 2003, Appellants filed a verified complaint against Mr. Vaughn in the Chancery Court of Hamilton County ("trial court"). The complaint alleged that Mr. Vaughn was systematically embezzling money from Cash Mart and using Cash Mart credit cards for his personal entertainment and expenses. Appellants asked the court to award Cash Mart a monetary judgment, amount to be determined at trial, as well as a Writ of Possession for all of the books and records of Cash Mart. Moreover, the Appellants asked the court to determine that Mr. Vaughn's option to purchase 73.33% of Cash Mart was void.

Following the filing of the complaint, in May of 2003, Mr. Vaughn married Brenda Chaney Vaughn ("Appellee" or "Mrs. Vaughn") and only fourteen days later, Mr. Vaughn exercised his option to purchase 73.33% of Cash Mart by notifying Appellants via letter and enclosing a check for $100.00. Concomitantly, Mr. Vaughn transferred his interest in Cash Mart to Mrs. Vaughn. In the meantime, McWilliams incorporated a new business called America's Cash Mart ("ACM") and began operating ACM in all of Cash Mart's previous locations.

Mrs. Vaughn filed an intervening complaint in the instant action on November 18, 2003, alleging that she was the majority shareholder of Cash Mart and as such had an

---

[2] At the outset, we must note that the record in this case is particularly voluminous, yet a substantial amount of the record is inapposite to the dispositive issues in this appeal. Because these parties have chosen to conduct themselves in an unnecessarily litigious manner, the procedure followed by the parties and the trial court has been difficult to discern in this appeal. Rather than tax the length of this Opinion with details of the parties' superfluous disputes over the past sixteen years, we have opted to include only the facts and events that are salient to the resolution of this appeal.

interest in the subject of the litigation. Mrs. Vaughn further alleged that McWilliams was liable for breach of contract, intentional interference with a business relationship, conversion of Cash Mart's assets, and violation of his fiduciary duty of loyalty. On January 2, 2004, the trial court ruled, upon motion for partial summary judgment filed by Mr. Vaughn, that the employment and option contract entered into by Appellants and Mr. Vaughn in 2001 was a valid and enforceable contract.

In the meantime, the trial court allowed Mrs. Vaughn's intervention as a plaintiff, and Mrs. Vaughn filed an amended complaint adding ACM as a defendant.[3] The amended complaint alleged that ACM converted Cash Mart's assets and that ACM was the alter ego of McWilliams. Appellants responded to Mrs. Vaughn's complaint by arguing that she failed to state a claim for which relief could be granted and that the transfer of interest in Cash Mart from Mr. Vaughn was fraudulent and should thus be set aside.

Next, Appellants filed a motion for partial summary judgment on April 12, 2004, asking the court for a judgment on the amount of money and assets that Mr. Vaughn had embezzled from Cash Mart; specifically, Appellants alleged the total amount to be $252,202.54, and further averred that the undisputed material facts supported Appellants' calculations. Appellants also asked the trial court to bifurcate the matters into two separate trials,[4] and again alleged that the transfer of Mr. Vaughn's interest in Cash Mart to his wife was fraudulent and should be set aside. Appellants requested that all matters should be stayed pending a resolution of the question of whether the transfer to Mrs. Vaughn was fraudulent.

It is rather difficult to discern the outcome of Appellants' motion because of the state of the record in this case, although it appears that the trial court held a hearing on the motion on May 4, 2004. However, there is no resultant order from the May 4, 2004 hearing, nor is there a transcript of the proceedings. Thus, it is unclear how this first motion for summary judgment was resolved. Regardless, on July 8, 2004, Appellants filed an amended complaint against both Mr. and Mrs. Vaughn, alleging fraudulent breach of trust, and arguing that the contract between Mr. Vaughn and Appellants was invalid.[5] The trial court held another hearing July 28, 2004, in which it determined that the two matters would be bifurcated into separate trials, and that "matters related to . . . Fraudulent Conveyance are to be heard in a separate trial." This order was entered August 25, 2004.

---

[3] ACM was later voluntarily dismissed and is not a party to this appeal.

[4] To be clear, the first matter involves McWilliams and Cash Mart versus Mr. Vaughn; the second matter involves Mrs. Vaughn versus McWilliams, Cash Mart, and America's Cash Mart.

[5] Although the parties in this case filed many perplexing pleadings and motions throughout this case, this allegation is especially perplexing in light of the fact that the trial court had already ruled that the employment agreement and option were in fact valid.

After this point, it becomes increasingly difficult to discern what happened at the trial level.[6] As best we can discern, this matter was continued several times as the parties engaged in discovery. While a trial in the matter of McWilliams and Cash Mart versus Mr. Vaughn was set for February of 2005, this trial did not take place and no further action was taken until 2007 when the Clerk & Master held a hearing on the claims against Mr. Vaughn. This resulted in an eventual settlement between Mr. Vaughn and Appellants and a judgment of $125,000.00 was entered against Mr. Vaughn in favor of Appellants. An agreed order was entered February 6, 2009, stating that any further claims between Appellants and Mr. Vaughn were expressly waived. Importantly, the agreed order also noted that the matters related to Mrs. Vaughn's claims against McWilliams, Cash Mart, and ACM were still pending and were unaffected by the entry of the agreed order.[7]

Accordingly, only the case between Appellants and Mrs. Vaughn remained, and the actions taken by the parties from this point forward are those most relevant to the issues now on appeal. On March 18, 2010, Appellants again moved for partial summary judgment, this time asking the court to determine that Mrs. Vaughn was not a member of Cash Mart and as such lacked standing to bring her claims. In support, Appellants provided the operating agreement of Cash Mart, and drew the trial court's attention to a provision in the agreement which stated that "[n]o assignment of all or any part of a Member's membership Interest to a Person who is not already a Member of the Company shall be effective unless such Assignment is approved by the unanimous written consent of all members[.]" According to Appellants, Mr. Vaughn was incapable of validly transferring any membership interest to a non-member without first getting written consent from all members.

Mrs. Vaughn filed a written response, as well as a cross-motion for partial judgment on the pleadings, in which she averred that the employment agreement and option contract were valid and enforceable and that the trial court's January 2, 2004 order had already dealt with this issue. Appellants responded to Mrs. Vaughn's motion by arguing that the validity of the transfer from Mr. Vaughn to Mrs. Vaughn was not actually addressed by the January 2004 order, and that the court had only determined the validity of the initial contract between Appellants and Mr. Vaughn.

Mrs. Vaughn then filed yet another motion, this time asking the trial court for partial summary judgment on the validity of the transfer of the option from her husband. Therein, Mrs. Vaughn argued that pursuant to the option contract, the only requirements for a proper transfer were for Mr. Vaughn to give notice to Appellants and to pay

---

[6] The confusion in this case is exacerbated by the fact that the original trial judge recused himself with no explanation, causing the parties to file several motions attempting to discern the reason for the recusal. Moreover, both parties changed counsel several times throughout this case.

[7] Specifically, the order stated "that other matters remain pending in this matter, including the claim of the Intervening Plaintiff, Brenda Chaney Vaughn, against Intervening Defendants Adrian Lynn McWilliams and America's Cash Mart, Inc."

Appellants $100.00. Because these steps were taken, Mrs. Vaughn asserted that the transfer of the option was valid and that she was entitled to a judgment that she owned 73.33% of Cash Mart and any successor businesses. Notably, this motion did not seek summary judgment regarding any fraudulent conveyance claim or defense. Appellants responded in opposition to Mrs. Vaughn's motions for partial summary judgment, again raising the issue of whether the transfer to Mrs. Vaughn was fraudulent and thereby void.

On February 16, 2011 the trial court held a hearing on the parties' various motions,[8] and an order was entered in which the trial court determined that Mrs. Vaughn owned 73.33% of the interest in Cash Mart. In addressing Appellants' partial motion for summary judgment, the trial court determined that the language of the operating agreement was inapposite because Mr. Vaughn and Appellants entered into the employment agreement and option contract years after the operating agreement was drafted. Moreover, the trial court agreed with Mrs. Vaughn that all of the necessary steps had been taken to effectuate the exercise and transfer of the option. With regard to Appellants' assertion that Mrs. Vaughn's motion should be denied on the basis that the transfer was fraudulent, the trial court was unpersuaded. It wrote that (1) Appellants failed to properly support the motion because they did not file an affidavit alleging that Mr. Vaughn was insolvent at the time of the transfer; (2) Appellants had waived any and all claims against Mr. Vaughn in the 2009 agreed order and any claims related to fraudulent transfers would have to be brought against Mr. Vaughn; and (3) Mrs. Vaughn put forth evidence indicating that consideration supported the transfer of the option from Mr. Vaughn. Accordingly, it was determined that Mrs. Vaughn indeed owned 73.33% of Cash Mart, and her motion for partial summary judgment was granted.

As a result, Appellants again moved the court on May 20, 2011 for partial summary judgment, this time explicitly alleging that the transfer to Mrs. Vaughn was fraudulent and should be set aside pursuant to Tennessee Code Annotated section 66-3-308.[9] Appellants also pointed out that the previous order of the trial court incorrectly dealt with this issue, as it apparently granted Mrs. Vaughn summary judgment despite the fact that no party had asked the court for summary judgment on whether the transfer was fraudulent.

In response, the trial court held a hearing on Appellants' motion for summary judgment and other pending motions. An order was entered July 18, 2011, in which the trial court decided the other pending motions, but concluded that the issue of a fraudulent conveyance was still outstanding and had not been resolved by the March 2011 order.

---

[8] The record does not contain a transcript of this hearing.

[9] Tennessee Code Annotated section 66-3-308 governs the remedies of creditors under Tennessee's Uniform Fraudulent Transfers Act ("UFTA"). This section provides that "In an action for relief against a transfer or obligation under this part, a creditor, subject to the limitations in § 66-3-309, may obtain . . . avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim."

The trial court reversed course on July 28, 2011, however, filing an amended order in which it decided that the fraudulent conveyance issue had in fact been dealt with by the March 2011 order, and as such Appellants' motion was denied as moot. The trial court further noted that even if the motion were properly before the court, it would have to be denied because disputed material facts still existed, such as the issue of Mr. Vaughn's insolvency at the time of the transfer. In spite of its acknowledgement that material facts were in dispute, the trial court went on to conclude that "the defense submitted by [Appellants] under the Uniform Fraudulent Transfer Act is not subject to being heard at the trial of this cause."

The parties continued to engage in various disputes over the next several years, and the trial on Mrs. Vaughn's outstanding claims against Appellants was continued numerous times. Finally, on February 1, 2017, the matter came to trial and the court heard testimony from the parties as well as a financial expert hired by Mrs. Vaughn. In an order entered April 17, 2017, the court determined that Appellants had converted the assets of Cash Mart and thus, based on Mrs. Vaughn's ownership interest in Cash Mart, entered a judgment against Appellants for $73,682.97.[10] All outstanding motions and claims were denied and dismissed by the trial court, and costs were assessed against the Appellants. Following several post-trial motions, Appellants filed a timely notice of appeal to this Court.

## Issues Presented

As best we can discern them, the issues raised by the Appellants in this case are as follows:

1. Whether the trial court erred in its decision to award the Appellee 100% of the assets of Cash Mart, despite the fact that the Appellee possessed only 73.33% interest in the business.
2. Whether the trial court erred as a matter of law in its 2011 pretrial ruling that Appellants were prohibited from raising fraudulent conveyance as a claim or affirmative defense at trial, after apparently ruling that the Appellants were not entitled to summary judgment on that issue.

In the posture of appellee, Mrs. Vaughn raises an additional issue for our review:

---

[10] The trial court reached this amount after concluding that Appellants had indeed converted the tangible property of Cash Mart for the use of ACM. In doing so, the trial court relied on a "depreciation and amortization report" submitted at trial, and therefrom concluded that the replacement value of the converted property was $47,957.00. In addition, the trial court calculated the prejudgment interest to be $25,727.97, meaning the total judgment came to $73,682.97. The trial court declined to award Mrs. Vaughn any damages for what it described as "intangible property" or consequential or incidental damages.

1. Whether the trial court erred in its decision to deny Mrs. Vaughn incidental or consequential damages.

## **Discussion**

We begin with Appellants' argument concerning the grant of summary judgment on the issue of the alleged fraudulent conveyance, as we have determined that it is the dispositive issue in this appeal. It is well-settled that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P. 56.04. This Court reviews a trial court's grant of summary judgment de novo with no presumption of correctness. *See City of Tullahoma v. Bedford Cnty.*, 938 S.W.2d 408, 412 (Tenn. 1997). In reviewing the trial court's decision, we must view all of the evidence in the light most favorable to the nonmoving party and resolve all factual inferences in the nonmoving party's favor. *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox. Cnty. Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999). If the undisputed facts support only one conclusion, then the court's summary judgment will be upheld because the moving party was entitled to judgment as a matter of law. *See White v. Lawrence*, 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

In the present case, the Appellants argue that the trial court committed reversible error in prohibiting the Appellants from raising fraudulent conveyance pursuant to Tennessee Code Annotated section 66-3-308 as a claim or defense at trial. According to the Appellants,

> [t]he first round of Motions for Partial Summary Judgment did not resolve whether or not [Mr. Vaughn's] conveyance of the assignment to his wife in the face of the suit filed by [Appellants] was subject to the Act. . . . neither party's cross-motions, affidavits, briefs in support, or other evidentiary material submitted to the [trial court] in support of the motions addressed the claim and defenses raised by [Appellants] pursuant to the Act.

Appellants assert that when the trial court entered its March 3, 2011 order concluding that Mrs. Vaughn was entitled to summary judgment on the issue of fraudulent conveyance, the trial court conflated Appellants' motion for partial summary judgment with their response to Mrs. Vaughn's motion for partial summary judgment. Appellants now aver that "the issues raised by the parties in their competing Motions . . . were limited in scope[,]" and as such, Appellants were never under any burden to produce evidence demonstrating why summary judgment in favor of Mrs. Vaughn was inappropriate as to the issue of a fraudulent transfer.

Having thoroughly reviewed the record, we conclude that the Appellants' argument is well taken. As an initial matter, and central to the resolution of this appeal, our review of the record reveals that despite the trial court's decision to apparently grant summary judgment in favor of Mrs. Vaughn on the issue of fraudulent conveyance, Mrs. Vaughn filed no motion in the trial court seeking this relief. As this Court has previously stated, "courts may from time to time be confronted with cross-motions for summary judgment. In such cases, a court must rule independently on each motion and determine, with regard to each motion, whether disputes of material fact with regard to that motion exist." *Savage v. City of Memphis*, 464 S.W.3d 326, 332 (Tenn. Ct. App. 2015) (citing *CAO Holdings, Inc. v. Trost*, 333 S.W.3d 73, 82 (Tenn. 2010)). Moreover, "the denial of one party's motion for summary judgment does not necessarily imply that the other party's motion should be granted." *Id.* Rather, when considering cross-motions for summary judgment, the court must determine whether each party is "independently entitled to summary judgment." *Id.*

A review of the pleadings actually filed is helpful to an understanding of the trial court's failure. Here, a claim or defense involving fraudulent conveyance was raised by Appellants in response to Mrs. Vaughn's various motions. Later, Appellants filed a motion for summary judgment squarely addressing the fraudulent conveyance issue. Mrs. Vaughn, however, never filed any summary judgment motion on the issue of the alleged fraudulent conveyance. Despite this fact, in ruling that Appellants were precluded from arguing fraudulent conveyance at trial, the trial court apparently granted summary judgment in Mrs. Vaughn's favor on this issue.

Respectfully, the trial court's action was error. Again, cross-motions for summary judgment must be treated independently and the simple fact that Appellants' fraudulent conveyance motion for summary judgment was denied does not result in summary judgment in favor of Mrs. Vaughn. *See Savage*, 464 S.W.3d at 332. The denial of any purported summary judgment motion by Appellants concerning the issue of a fraudulent conveyance does not finally resolve the issue, nor does it preclude this issue from being raised at a later trial. *See Elite Emergency Servs., LLC v. Stat Sols., LLC*, No. M2008-02793-COA-R3-CV, 2010 WL 845392, at *9 (Tenn. Ct. App. Mar. 10, 2010) (citing *Sheridan Music Group, Inc. v. Bramlett*, No. M2005-01307-COA-R3-CV, 2006 WL 3246121, at *4 (Tenn. Ct. App. Nov.8, 2006), *perm. app. denied* (Tenn. Mar. 5, 2007)) (holding that the denial of a motion for partial summary judgment is not a final judgment).

Thus, in order for the issue to be precluded from trial, summary judgment must have been granted in favor of Mrs. Vaughn. Rule 56 of the Tennessee Rules of Civil Procedure contains clear requirements governing summary judgment practice. *See generally* Tenn. R. Civ. P. 56.03 (requiring moving party's to file statements of undisputed material facts in support of their requests for summary judgment), 56.04 (governing summary judgment practice). Nothing in the record indicates that Mrs.

Vaughn filed a properly supported motion for summary judgment. Appellants' action in raising fraudulent conveyance in their responsive filings is simply not a substitute for a properly filed and supported motion for summary judgment filed on behalf of Mrs. Vaughn.

Moreover, even had a proper motion been filed, it is not clear that the trial court applied the proper burden-shifting analysis. Here, the trial court's ruling on summary judgment states that the Appellants failed to negate an essential element of Mrs. Vaughn's claim because Appellants did not offer an affidavit of insolvency showing Mr. Vaughn's financial state at the time the transfer to Mrs. Vaughn occurred. While this may be an appropriate basis to deny a motion for summary judgment in support of a fraudulent conveyance claim or defense, it may not be sufficient to support the grant of summary judgment precluding a party from raising this argument at trial. Instead, in order to obtain summary judgment so that this issue would be precluded at trial, the burden would fall to Mrs. Vaughn to "either (1) [] affirmatively negat[e] an essential element of [Appellants'] claim or (2) [] demonstrat[e] that [Appellants'] evidence at the summary judgment stage is insufficient to establish the [] claim or defense." *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 264 (Tenn. 2015) (applying where the moving party does not bear the burden at trial). Nothing in the trial court's March 3, 2011 order includes a determination that Mrs. Vaughn met this burden, thereby shifting the burden to Appellants to set forth specific facts showing that summary judgment was not appropriate. Only if Mrs. Vaughn were able to meet this burden should summary judgment have been granted in her favor; without summary judgment in favor of Mrs. Vaughn, the trial court erred in precluding the issue of fraudulent conveyance at trial.

Finally, the trial court's decision to grant summary judgment in favor of Mrs. Vaughn is fundamentally flawed. As previously discussed, summary judgment is only appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts. Tenn. R. Civ. P. 56.04. Here, the trial court's later ruling in the July 28, 2011 order on the issue of fraudulent conveyance expressly states that there are genuine factual disputes concerning an element of Appellants' fraudulent conveyance claim. While a determination that other essential elements of the claim had been negated by Mrs. Vaughn's proof or that Mrs. Vaughn had met her burden to show that Appellants were unable to prove another essential element of the claim could render this dispute of fact irrelevant to the issue of summary judgment, nothing in the trial court's previous March 3, 2011 order make the required findings that Mrs. Vaughn indeed met her burden of production.[11] *See generally Smith v. UHS of*

---

[11] This is assuming, of course, that a proper motion for summary judgment was filed by Mrs. Vaughn as to this claim.

*Lakeside, Inc.*, 439 S.W.3d 303, 314 (Tenn. 2014) (holding that "a trial court's decision either to grant or deny a summary judgment" must be "adequately explained").

In our view, this chain of events cannot be corrected without vacating the trial court's grant of summary judgment and remanding for further proceedings. Here, the trial court granted summary judgment to Mrs. Vaughn on the issue of fraudulent conveyance in the absence of a proper motion seeking such relief. *Cf.* ***Hood v. Jenkins***, 432 S.W.3d 814, 825 (Tenn. 2013) (citing ***Gentry v. Gentry***, 924 S.W.2d 678, 680 (Tenn.1996)) (holding that a judgment is void where "the judgment itself was outside of the pleadings."). Additionally, the trial court appears to have misapplied the burden of production, as well as the summary judgment standard, in reaching this result. In light of the profound deficiencies in this case, we decline to review the trial court's alternative bases for the grant of summary judgment. Instead, we vacate the trial court's judgment and remand for reconsideration. If Mrs. Vaughn seeks summary judgment on the issue of any alleged fraudulent conveyance, she must file a proper motion pursuant to Rule 56 of the Tennessee Rules of Civil Procedure. Because Mrs. Vaughn's entitlement to relief on her claims at trial likely depends on the resolution of the fraudulent conveyance issue, all other issues related to the bench trial in this matter are pretermitted.

## Conclusion

The decision of the Hamilton County Chancery Court is vacated and remanded for proceedings consistent with this Opinion. Costs of this appeal are taxed against the Appellee, Brenda Chaney Vaughn, for which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE